Hester, Ex'r *vs.* Young.

| 2 | 31 |
|---|---|
| 101 | 679 |
| 2 | 31 |
| 108 | 80 |
| 2 | 31 |
| d112 | 214 |

No. 3.—STEPHEN HESTER, Executor of FREDERICK WOMACK, plaintiff in error *vs.* JAMES YOUNG, defendant in error.

[1.] The Act of 1802, prohibiting the Judges of the Superior Courts from withholding any grant, deed or other document from the jury, unless barred by the Act of Limitations, does not repeal the law of evidence as to the execution of such papers; nor prevent the Judges from pronouncing upon their legal character. The only effect which it has, is to prevent them from withholding from the jury papers, whose legal character is admitted or adjudged by the Court and which are legally proven.

[2.] An instrument purporting to be a deed, by which the grantor gives to his son certain property, after his death and the death of his wife, is not a deed, but a testamentary paper, and cannot be read to the jury in any case affecting the title to personalty in a Court of Common Law, until it has passed to probate before the Ordinary.

[3.] A paper, having the formalities of a deed, may notwithstanding be a will.

[4.] In determining whether an instrument be a deed or a will, the Court will not consider what the maker believed it to be, but what in point of law it is.

[5.] The intention of the maker, as to the character of the estate conveyed, is the criterion by which the Court will determine whether a given paper is a deed or a will, and if the intention gathered from the whole paper is, that the estate is not to pass, or the instrument take effect, until his death, it is a will and not a deed.

Trover in Bulloch Superior Court. Tried before Judge FLEMING. Verdict for the defendant, and motion for a new trial overruled — October Term, 1846.

For the facts of the case and the grounds of error, see the decision of the Supreme Court.

D'Lyon and Bartow for the plaintiff in error.

Ward & Owens and Lloyd for the defendant in error.

Mr. Lloyd submitted the following argument:

Upon the trial of this case in the Court below, plaintiff offered in evidence a paper, of which the following is a copy:

GEORGIA,
Effingham County, } 19th day of June, in the year of our Lord, 1826.

KNOW ALL MEN, That I William Womack, in consideration of natural love and affection for my son Frederick Womack, I do give unto him the following property : three hundred acres of land which I now live on, two negroes, Will and Nancy, two horses, and the rest of my stock of hogs and cattle, together with my household furniture, *after my death* and the death of my wife, to have and to hold the said property forever.

In witness whereof I have hereunto set my hand and seal the day and year above written. WILLIAM WOMACK. [L. s.]

Signed, sealed and delivered in presence of JOHN HINES.

Test,

HOWALL HINDS, *J. P.*

This paper was ruled out by the Court, upon the objection of defendant's Attorneys, that it was testamentary in its character and could not be admitted without probate. Whereupon the plaintiff submitted to a verdict, and moved for a new trial on the following grounds:

1st. Because his Honour, the Judge, erred in ruling out a deed offered in evidence by the plaintiff from William Womack to Fred-

Hester, Ex'r vs. Young.

erick Womack, dated 19th June, 1826, conveying the slaves in dispute.

2d. Because the Court erred in construing said deed to be a will, or testamentary in its character, and requiring probate as a will before it could be admitted in evidence.

3d. Because the said verdict is contrary to law and evidence.

Upon the argument on the motion for a new trial, the Court affirmed the decision given at *Nisi Prius*, and to that decision the plaintiff's counsel assign the following for grounds of error:

1st. That his Honour, the Judge, erred in refusing the new trial in this — that under a statute of the State of Georgia, passed November 26th, 1802, the Judges of the Superior Courts shall not, in any case whatever, withhold any grant, deed, or other document from the jury, under which a party in a cause may claim title, except such evidence of title as is barred by the Statute of Limitation.

2d. That the Court committed error in this — that the said deed offered in evidence, contains none of the constituents of a will, for that it contains a conveyance of real estate, which, under a will, can only pass when it is attested by three witnesses. That it was evidently intended by the donor to convey an estate *in præsenti* with the right of future enjoyment, which intention should have been left to the jury to have determined from all the facts and circumstances; that the said deed was recorded and intended to operate as an irrevocable instrument, which clearly distinguished it from a will.

3d. That the Court erred in refusing a new trial in this — that the said deed, in relation to the real estate, operated as a covenant to stand scised to uses, and that in reference to personal estate, the same principles of law are applicable, there being no distinction in the State of Georgia between real and personal property.

The Court has committed no error in its decision, and we will consider the grounds assigned by the counsel for the plaintiff in error, in the order in which they were stated.

The first exception assumes the broad proposition, that the instrument should have been admitted without any proof of execution, because the plaintiff claimed title under it. The Act of the Legislature 26th November, 1802, is in the following words:— " That the Judges of the Superior Courts shall not, in any case whatever, withhold any grant, deed, or other document, from the jury, under which any party in a case may claim title, except such

evidence of title as may be barred by the Act of Limitation."— *Vol.* 2, *p.* 56.

Allowing, for the sake of argument, that the proper construction of the statute is, that every paper which the counsel in a cause may choose to offer as a document of title must, without proof of execution, authenticity, or any of the *indicia* of genuineness, be allowed to go to the jury. We contend that the statute only applies to suits for real estate, because by the Act, it is limited to Judges of the Superior Court. It could never have been the intention of the Legislature, that it should be the duty of the Judge of the Superior Court to receive testimony which it would equally be the duty of the Justices of the Inferior Court, and all the minor Courts to reject. It could never have been their intention that there should exist two rules of testimony, the one to be binding on the Superior Courts, the other to control all other jurisdictions within the State. This anomaly can only be destroyed by confining the law to those cases in which the Superior Courts have exclusive jurisdiction by the constitution, to wit: suits for real estate.

There are other *indicia* about the law which may be brought in aid of this construction. The words "grant and deed" (to which the word document is only suppletory) apply particularly to real estate. The word "grant" in Georgia refers to the instrument by which the State conveys land to her citizens. The word "deed," in its technical meaning, applies only to real estate — we speak of a sale of chattels, and the words "bill of sale" mark the instrument of conveyance. *Acts* 1839, *p.* 196.

The word title is generally used with reference to land — we say "a title to real estate" — we speak of property in things personal. But further, to admit the paper, it must be a grant, deed, or document under which they claimed title. They claimed title under it as a document conveying the slaves in dispute from William Womack to Frederick Womack; but *until* the Court was satisfied of the genuineness of the signature of William Womack, and the authenticity of the instrument, it could not be admitted, because these facts were necessary to make it a document of title under their own showing. Was the Court to take the *ipse dixit* of counsel for this?

We contend for a different construction of the statute. It was to prevent Judges from withholding testimony from the jury, because they did not see its relevancy, and thereby making themselves

the judges of its weight and effect. It was to give to the jury the power of deciding on the applicability of such testimony. But such testimony must be legally brought before the jury, and whether it was legally offered, the Judge must determine.

Suppose that an instrument were forged, must the Judge admit it without proof, because it is a document of title? If this be the law, why pass the Act of 1827, by which deeds recorded, under certain restrictions, might be given in evidence? Why the Act of 1837, extending the time for such record? Why the Act of 1839, which is prospective, allowing an indefinite time to make such record? or the Acts of 1841 and 1845, to the same effect? Where the use, why the necessity, of this multiplied legislation, if the Act of 1802 allowed all these deeds to be given in evidence without any proof at all? *Prince Dig.* 166; *Acts* 1837, 91; *ibid* 1839, 196; *ibid* 1841, 140. '45, 38.

These are statutes in *pari materia*, because they relate to the same subject, to wit: the admission of deeds in evidence before the Courts of this State. 1 *Kent* 463. Statutes in *pari materia* must be construed together. 9 *Cowen* 507. And it is an established rule of law, that all Acts in *pari materia* are to be taken together as one law, and more particularly when the want of such a construction leads to absurdity. Now, with regard to a statute, the rule is, that it must be so construed that all parts, if possible, may stand, *magis ut valeat quam pereat. Dwarris, t. p.* 46; 10 *Pick.* 241; *Dwarris, t. p:* 45. It is impossible that these statutes can stand together, with the construction sought to be placed upon them by the counsel for the plaintiff in error. The construction above given reconciles them all.

Another rule for the construction of statutes is — " that if there arise out of the Acts of the Legislature, collaterally, any absurd consequences manifestly contradictory to common reason, they are, with regard to those collateral consequences, void." 1 *Black. Com.* 91. Now, the statute, under the construction contended for by the plaintiffs in error, is manifestly contradictory to common reason. That the Legislature should have intended to subvert the whole law of evidence, rendered nugatory their own statutes, held out encouragement to fraud and forgery, is so manifestly unreasonable, that if the law admits of a construction to that effect alone, we ask the Court in the name of that common reason which it outrages, to declare it void.

Thus far we have proceeded upon the assumption, that the in-

strument in question was not a deed. If it were a deed it was properly authenticated, and should have been admitted in evidence. This brings to the second ground of exception the construction of the instrument in question. It is a will under any definition which can be given to it; and under adjudicated cases, " a will is a disposition of real and personal property, to take effect after the death of the testator." 4 *Kent Com.* 501 *Co. Litt.* 111 *a.* " *Testamentum est voluntatis nostræ justa sententia de eo quod quis post mortem suam fieri velit. Dig. Civ. L.* 28. 11, *Pandects liber* 2. " A will is the legal declarations of a man's intentions which he wills to be performed after his death." 2 *Black. Com. t. p.* 417. " A will is the declaration of the mind, either by word or writing, in disposing of an estate, and to take place after the death of the testator." *Carthew* 38 ; 7 *Bac. Ab.* 299.

These are the definitions of a will, taken from the authorities ancient and modern, from the Civil and the Common Law. The instrument in question comes strictly within the terms of every definition. It is a disposition of real and personal property by William Womack, to take effect after the death of the testator, William Womack. It is the legal declaration of William Womack's intentions which he wills to be performed *after his death.* It is the declaration of the mind of William Womack by writing, in disposing of his estate, and it is to take place after the death of William Womack.

But it is contended in the exceptions, that it is not a will because it has some of the requisites of a deed, signed before two witnesses only, and recorded.

To this we reply. That if a paper contains the disposition of property to be made after death, though it were meant to operate as a settlement, or a deed of gift, or a bond, though such paper were not intended to be a will, nor other testamentary paper, but an instrument of a different shape, yet if it cannot operate in the latter, it may nevertheless operate in the former capacity. 4 *Eng. Ec. R.* 108; *Jarmyn on Wills, m. p.* 19. Deeds drawn and engrossed were found to be a will, though no writing mentioned the conveyance to be a will. *Smith* vs. *Aston*, 8 *Viner's Ab.* 45. A deed indented between father and son was found to be a will. 4 *Haggard Ec. R.* 356, 44; 2 *ibid*, 554. An instrument in any form, whether deed-poll, or indenture, if the obvious purpose is not to take place until after the death of the person making it, it shall operate as a will. *Buller, J.* 2 *Ves. Sr.* 230; 1 *McCord*, 522; *ibid.* 439. The particular form of the paper

makes no difference; the question is as to the intent; was it intended to operate after the death of the party? if so, it is a will, be the writing what it may.   6 Cruise Dig. 7; 2 Nott & McCord, 531; Carthew, 38; 1 Jarmyn on Wills 11 a.

It is evident, from the foregoing authorities, that the form of the instrument is not regarded.   If it be indenture, or deed-poll, bond, or agreement, under seal or not under seal, recorded or not recorded, witnessed by one or a dozen, it has no influence in its construction. It is the intention and meaning of the instrument, and the rule is clearly laid down in the following authority.

" The distinction between a will and a deed is pointed out thus : a will is the declaration of the mind, either by words or writing, in disposing of an estate, and to take place after the death of the testator.   That circumstance must decide whether it is a will or not."   The At'y Gen. Arguendo, 2 Vesey, Jr. 217 ; approved by Buller, J. p. 230, 229.

The question in this case is, when did William Womack intend that his son Frederick should take possession of this property ? After his death ?   It is evident from the face of the paper, the words " after my death," coming before the habendum and tenendum before the limitation.   He gives him his property after his death. He gives him his whole property, lands, houses, negroes, horses, stock and household furniture.   The very nature of the property conveyed, shows the testamentary character of the paper.   Can it be conceived that it was the intention of the father to divest himself of the control of all his property, of his power of selling, exchanging or using it ?   Is it not clear, from these facts, that the instrument was intended to be a revocable one, and convey such property as he owned at the time of his death?

Without doing any violence to the instrument, it may well be read thus: " After my death I give to my son, Frederick Womack, the following property."   And then it is a will, not only in effect, but in form.   If this be a true construction, the authorities above cited are conclusive.   But there are many adjudicated cases in which instruments, exactly like the present, have been pronounced upon as testamentary papers.

"I have given and granted, and give and grant, to my five sisters, and children of the sixth, their heirs, executors and administrators, in case they survive me, all my goods and chattels, real and personal estate, and all which I may claim in my own right, whether alive or dead."   Ld. Hardwicke; Ward vs. Turner,

2 *Vesey, Sr.* 440. This was construed to be a testamentary paper.

The words in that instrument are much stronger than those in the instrument which we are considering, "Have given and granted," showing, as it were, a complete conveyance of the property out of himself. But other words evincing an intention that it was not to take place until after his death, gave to it the incident of a will, as distinguished from a deed.

Upon a deed of gift by Dr. Pope, not to take place until his death, and sixpence delivered by way of symbol to put grantee in possession, was pronounced for as a will. *Ld. Hardwicke,* 2 *Vesey, Sr.* 440.

This is a case exactly in point. A deed of gift in which the grantor had gone so far as to give symbolical possession, yet inasmuch as the property itself was not to be enjoyed until after death, it was decreed to be testamentary.

A father, by deed, in consideration of natural love and affection, gave to his children certain slaves, to be equally divided between them, concluding, " I only reserve to myself a life estate in them." *Ragsdale* vs. *Booker,* 2 *Bailey R.* 588. This paper was held to be a will.

The paper which we are considering is a deed of gift for natural love and affection, but it retains a life estate for the grantor, because it does not go into effect until the death of William Womack. Is it not within the very letter of the authority ?

" Know all men by these presents, that I, J. B. Kinnard, for the love and affection which I do bear towards Jesse R. Welch, son of Catharine Wedeman, formerly Catharine Welch, after my death, to him and his bodily heirs, four negroes, with their future increase, namely, Fan and her daughter Martha, Rachael and Minty, but in case he should die without bodily heirs, the whole of the said negroes, with their increase, to return to my estate. Given under my hand and seal." 1 *Speer's Eq. R.* 256. This was held, if the word gives be supplied, to be a will by the Equity Appeal Court of South Carolina, upon an appeal and solemn argument.

It is also cited and affirmed in the unanimous decision of the Supreme Court of Common Law in South Carolina, in the case of *Crawford* vs. *McElvy,* 2 *Speer's R.* 230.

This case is identical with the one at bar, they run *pari passu* in every feature. Under this unbroken series of authorities, from Coke down to the present day, we contend that neither the form of the paper, its recitals, nor the technical terms used, control its

Hester, Ex'r vs. Young.

construction. That the incident and feature to which the Courts look, is the time when the property is to pass, and that, if it is not to vest in the donee until the death of the donor, it must be testamentary in its character, and the Courts will so declare it. But it is contended in the third ground of error that this instrument, with regard to the slaves in dispute, may stand good as a covenant to stand seised to uses. We reply —

1st. That the deed of covenant to stand seised, is a technical deed, arising and existing by virtue of the Statute of Uses 27th Henry VIII, and is applicable only to such kinds of property as were the subjects of that statute. The statute recites, " That where any person or persons stand, or be seised, or at any time hereafter shall happen to be seised of, and in, any honours, castles, manors, lands, tenements, rents, services, reversions, remainders, or other hereditaments." *Schley Dig*. 183. The words of the statute have no reference to personal property. The deed of covenant to stand seised, could never, from its very nature, have reference to personalty.

Prior to the year 1535, to avoid the Statutes of Mortmain, the Ecclesiastical corporations in England held large quantities of land, of which they were the usufructuaries, while the legal title was vested in others. The statute vests the title in the *cestui que use* wherever a use was created. The lawyers, taking advantage of this statute, devised the deed of a covenant to stand seised to uses, under which the statute vested the title without the necessity of livery of seisin, without which at that time an estate in lands could not be conveyed. The deed was intended to operate as an avoidance of livery of seisin, and of course can apply only to that species of property of which livery of seisin was necessary, to wit, real estate. So we find in the books —" A twelfth species of conveyance is called, covenant to stand seised to uses, by which a man seised of lands, tenements," &c. 2 *Black. Com. m. p.* 338.

" The second kind of conveyance that derives its effect from the Statute of Uses, and operates without transmutation of possession, is called, a covenant to stand seised. Formerly, if a person had covenanted for himself and his heirs, that for a certain consideration, another should have his *lands*, though the lands did not pass for want of livery of seisin, yet the use passed to the covenantee." 4 *Cruises Dig*. 115.

But the Courts have gone further and created, by construction, an implied covenant to stand seised where a party conveyed his

property to another after his death.   They held it to be a covenant
to stand seised to the use of the grantor for life, and after his death
to the grantee.   But the Courts could not give construction to any
such instrument, except one which had it been regularly executed,
would have been a covenant to stand seised under the statute; and
such an instrument, under the statute, can apply only to reale state.

But it is urged that, in Georgia, there is no distinction between
real and personal property.   We presume that this opinion is
founded upon the two statutes of 1804 and 1821, which put real
and personal estate upon the same footing as to distribution.
*Prince Dig.* 233, 247.

We know of no other law or statute in Georgia, which bears
upon the point, and these statutes have never been held as chang-
ing the character of the estates in any other way than in the matter
of distribution to which they refer.   There are several statutes in
Georgia which make an evident distinction between real and per-
sonal estate.

A deed of real estate must be attested by two witnesses — a deed
of personal property by one only.   *Prince Dig.* 166.   Personal
property, of a perishable nature, may be sold by an executor, by
petitioning the Court of Ordinary.   Other personal property must
be advertised forty days.   Land must be advertised four months.
*Ibid,* 223, 243, 248.

These instances might be multiplied indefinitely; but there is
one which we hold conclusive.   The Statute of Frauds which,
like the Statute of Uses, is an English statute, requires a will of
land to be signed before three witnesses.   Has it ever been con-
tended that the statutes before cited, putting real and personal estate
upon the same footing as to distribution, had invested personalty
with such a character that three witnesses were required to a will
of personalty to make it valid ?   If the Act of the Legislature has
not made the Statute of Frauds applicable to personalty, how has
it made the Statute of Uses ?

But it is said that negroes form so large a part of property, that
the laws have invested it with a character different from other per-
sonal property.   To this we reply, that in the neighbouring State
of South Carolina, where the same species of property exists, that
the Statute of Uses has been construed to apply solely to land, and
that there cannot be a deed of covenant to stand seised to uses, of
personal property.   4 *McCord R.* 201; 2 *Hill R.* 548 : 9.

If the instrument was a will it was properly rejected.   It was

sought to be introduced upon the fact of its having been recorded, no evidence being offered of the hand writing of the testator or subscribing witnesses. Now, independently of the fact, that there is no statute by which wills are made evidence by being recorded, a will is in its nature ambulatory and revocable, until the death of the testator, and the record of it in his life time is no proof whatever of its being his last will and testament.

Again, no will can be admitted in evidence, except after probate in that Court which is authorised to give it probate, which, in Georgia, is the exclusive right of the Court of Ordinary. *Greenleaf on Ev.* 560; 1 *Starkie R.* 194; 2 *Douglas* 709; 12 *Wheaton*, 175; 4 *T. R.* 258; 6 *Conn. R.* 503; 2 *Wheaton Sel.* 813; 8 *B & C.* 338; *Prince Dig.* 240, 910.

*By the Court.*—NISBET, Judge, delivering the opinion.

The facts disclosed in this record are as follows. The plaintiff instituted suit in the Court below, for the recovery of two slaves, and, upon the trial, having proven a demand, tendered in evidence the following paper.

" GEORGIA,            } 19th June, in the year of our Lord one thous-
*Effingham County*, }        and eight hundred and twenty-six.

Know all men by these presents, that I William Womack, in consideration of natural love and affection for my son, Frederick Womack, I do give unto him the following property. Three hundred acres of land which I now live on, two negroes, Will and Nancy, two horses, and the rest of my stock of hogs and cattle, together with my household furniture, after my death and the death of my wife, to have and to hold said property forever.

In witness whereof I have hereunto set my hand and seal, the day and year above written.        WILLIAM WOMACK, (L. S.)

Signed, sealed and delivered in presence of, &c.

Which paper was recorded in the office of Effingham Superior Court on the 26th June, 1826. The defendant's counsel demurred to this evidence, upon the ground, that it was not a deed but a testamentary paper, and not being proven before the Court of Ordinary, could not be admitted to prove title in the plaintiff to the negroes in question. The Court sustained the demurrer and ruled out the paper. Whereupon the plaintiff submitted to a verdict for the defendant.

Hester, Ex'r *vs*. Young.

The plaintiff moved then a rule Nisi for a new trial, upon the following grounds, to wit.

1. Because the Court erred in ruling out a deed offered in evidence by the plaintiff, from William Womack to Frederick Womack, dated 19th June, 1826, conveying the slaves in dispute.

2. Because the Court erred in construing said deed to be a will, or testamentary in its character, and requiring probate as a will, before it could be admitted in evidence.

3. Because the verdict was contrary to law and evidence.

Having heard argument upon this rule, Judge Fleming refused a new trial. This refusal is the ground upon which the errors complained of are founded; and the bill of exceptions, and the assignment, make, as I understand them, two points, to wit.

1. The Court erred in ruling out the evidence in this, that under a statute of Georgia, passed 26th November, 1802, the Judges of the Superior Courts shall not, in any case whatever, withhold any grant, deed, or other document, from the jury, under which a party in a cause may claim title, except such evidence of title is barred by the Act of Limitation.

2. The Court erred in deciding that the paper ruled out was testamentary in its character, and required to be proven before the Ordinary before it could be admitted in evidence — and not a deed. Such are the facts and the questions presented to this Court for determination.

Preliminary to the consideration of these points, I remark, that the last is presented in the bill and also in the assignment, in more than one form, yet in each variant phase embracing the real question as I have stated it. There is nothing said in the motion for a new trial about the Act of 1802. The question under that Act, is, however, made in the bill of exceptions, and although practically waived, by counsel for plaintiff in error declining to argue it, we think it expedient to consider it, because, sooner or later, we shall have it to do. We prefer now, so far as the authority of this Court can do it, to give to the diverse constructions of that Act, uniformity.

[1.] The Act of 1802 is in the following words: "The Judges of the Superior Courts, shall not, in any case whatever, withhold any grant, deed, or other document, from the jury, under which any party in a cause may claim *title*, except such evidence of title as may be barred by the Act of Limitation." *Prince's Digest, page* 210. This Act is limited to the *Judges of the Superior Courts;*

Hester, Ex'r *vs.* Young.

it is mandatory to them, and cannot, therefore, be applicable to the Justices of the Inferior Courts. From this fact, and inasmuch as the Superior Courts alone have jurisdiction of titles to land, it is argued that the Legislature intended it to apply only to such cases as involve the title to real estate. This construction, say counsel for the defendant, derives strength, from the fact that the words "grant and deed" are, in professional parlance, usually used to describe the evidence of title to real property. Whilst we believe that the Act of 1802 does not extend to cases before the Inferior Courts for the reason stated, yet we are of the opinion that it does apply to all suits before the Superior Courts, involving the title to property, whether real or personal.

Statutes "in *pari materia*" are to be construed together. By this rule, in ascertaining the intention of the Legislature, we are to consider all other laws in force in Georgia, in relation to grants, deeds, and other documents, under which a party may claim title. If this Act be construed to mean, that any and all papers which purport to relate to the title of property which may be in issue before the Superior Courts, shall be admitted in evidence without regard to the legality of their execution, or to the character which they assume, then is the whole law of evidence as applicable to *deeds, grants, and other documents,* repealed— the title to all the property in the State insecure, and the Legislature convicted of doing a very absurd and ridiculous thing. Under such a construction, a deed must be admitted with or without attestation, sealing and delivery, and record; devises of real estate, with or without the necesssary witnesses; testamentary papers as deeds, and deeds as testamentary papers, and forged instruments of every kind, equally with genuine instruments. We will not adopt this as the true construction. We believe that this law does not interfere with the rules of evidence, and it is still, as much as it was before its enactment, the duty of the Judges of the Superior Courts to withhold all deeds, grants and documents from the jury unless they are proven according to law. Nor does it inhibit them from determining upon the legal character and import of such papers as are claimed to be deeds and grants; their duties in this regard remaining as they were previous to 1802. In our judgment, the Legislature only designed to prevent the Judges from withholding from the jury, papers, whose legal character is admitted or adjudged by the Court, and which are duly proven; so that the jury may be able to determine what, if any, evidence they

afford of title. It may be said, that in a country where the powers and duties of Judges and juries are so well understood and so precisely defined as they are in ours, such an act, with such a construction, was wholly unnecessary. This may be so. We can, however, well imagine that the Legislature believed it expedient to declare the law as to the power of the Judges in this matter, in order to prevent the possibility of their abuse. If the first construction be admitted, the act of 1802 is in conflict with all those Acts of the Legislature in relation to the execution and admission of deeds in evidence, passed both before and since its date. If the construction we now give to it be admitted, then it is in harmony with them. The Legislature have in frequent instances passed laws since the Act of 1802, directly at war with the construction first referred to; thus disclaiming that construction. *See Prince Dig.* 166; *Acts* 1837, 91; *ibid* 1839, 196; *ibid* 1841, 140; *ibid* 1845, 38.

The word *evidence* in the last clause of the Act of 1802, affords a clue to the legislative intention. When they (the Legislature) speak of *evidence* of *title*, we are judicially constrained to infer, that by *evidence*, they meant *legal evidence*. The *evidence of title*, in this clause of the statute refers to *grants*, *deeds*, and *documents*, in the preceding clause, and explains what kind of deeds, grants, and documents, the Legislature meant — that is, such *grants*, *deeds*, and *documents*, as the Court might hold to be *legal evidence* of title. In our judgment, therefore, there is no error in the record on the first ground.

[2.] The able counsel who argued this cause for the plaintiff in error, contend, that the paper which was rejected by the Court is a *deed*, which passed a present property in and title to, the land and slaves named in it, to be enjoyed *in futuro;* that is, at the death of the grantor and his wife. The argument to support this view of it is in substance as follows. It contains all the formal requisites of a deed; it is an instrument in writing, signed, sealed, attested and delivered; it begins in the usual form and technical phraseology of a deed; it was the intention of the maker, that it should be a deed — he so understood it at the time of its execution, and intended that it should pass the interest in the property " *in præsenti,*" with the use and enjoyment limited to commence at a future period, to wit, *at the death of himself and his wife.* That he intended the gift to be irrevocable — which intent is manifest in this, that early after its execution he caused it to be recorded,

thus giving notice to the world, that he had given the property to his son and thus also dispensing with the necessity of a delivery of it. That a remainder in a slave, without a trust, can be limited by deed, after the creation of a life estate, and if this can be done, there is no reason and no law to prevent a man from conveying personal property by deed, reserving a life estate in himself, to take effect upon the determination of the life estate. That upon principle and by analogy to the Statute of Uses in England, by virtue of which a freehold may be limited to take effect after a life estate reserved in the grantor, the same thing can be done in this country as to personal property, particularly slaves. In other words, this paper may be construed to be a deed, with covenants to stand seised to uses. In England, say the learned counsel, this resort was had to avoid the necessity in freehold conveyances of livery of seisin, and inasmuch as actual possession is not necessary to convey personal property, therefore the principles and policy of the Statute of Uses may well apply to personal property. That there is no public policy in this country which conflicts with such a mode of conveying slaves, but on the contrary, the policy of our country is to enforce all *bona fide* contracts which a man may make not contravening the laws of the land, touching his property. That so far as concerns the land named in the paper, it can never be carried into effect as a *will*, because there are but two witnesses to it, the Statute of Frauds requiring three— if then, it cannot be available as a *will*, the Court should give such construction to it as will make it available ; that is, construe it to be a deed, and thereby effectuate the intention of the grantor. Such, I believe, are the positions of the plaintiff in error, stated I hope clearly, and certainly as favourably as the counsel themselves would state them. The argument on principle is strong, and it may not be denied that the authorities are, to some extent, conflicting upon some of these points. Much, however, of the argument might be addressed to the Legislature, rather than to this Court.

The fact that the paper under consideration is recorded does [3] not give it the character of a deed. Any and all such papers may be recorded, and it would restrict most fatally the range of constructive inquiry, to limit it to the registry. The record is notice to the world of what the paper is, and what it effects, but does not give it character. It does not determine whether the paper be a deed, or testamentary in its character. It is evidence that the maker intended the gift to be irrevocable, but is not proof that it

takes effect immediately; it may be evidence that he considered the paper a deed, but his believing it to be a deed does not make it so. Whether he would call this paper a *deed* or a *will*, is one question; whether it shall operate in law as a deed or a will, is another question, and *the question* which the Court below and which this Court have been called upon to determine.

Nor does the fact that this paper contains the formal requisites of a deed, or that it begins and ends with the technical phraseology of that instrument make it so. "If, (in the language of Chancellor Harper, in Kinard *vs.* Kinard,) the only effect is to dispose of property after the maker's death, it must operate as a will, or not at all." In Habergham *vs.* Vincent, Buller J. in giving the opinion of the Court, holds, that an instrument in *any form*, whether a deed-poll, or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a *will*. In one of the cases read before this Court and refered to by Buller J. in Habergham *vs.* Vincent, there were *express words of immediate grant*, but as upon the whole, the intention was to have a future operation after death, it was considered as a will. The *intention* of the maker as to *the character of the estate*, and as to *the time* when it is to take effect, wholly irrespective of the form of the instrument, is to be looked to in determining whether this paper be a deed or will. If the instrument has no effect until death, and that is upon the whole the intention of the maker, it is a *will*

The authorities in England and in our own country, have so settled the rule. 3 *Hagg.* 221; *Carth.* 38; *West's Case, Moore* 177; *Audley's Case, Dyer* 166 *a*; *Greene* vs. *Proude,* 1 *Mod.* 117; *Finch,* 195; 1 *Peere Williams,* 529; 8 *Viner's Ab.* 45; 4 *Eng. Ec. R.* 108; 4 *Hagg. R.* 44; 2 *Hagg.* 554; *Habergham* vs. *Vincent,* 2 *Vesey Jr.,* 230; 2 *Baily S. C. R.* 588; *Kinard* vs. *Kinard;* 1 *Speers Eq. R.* 256; *Crawford* vs. *McElvy,* 2 *Speers R.* 230; 1 *McCord,* 517; 1 *Will. Ex'rs.* 59. All the positions which we have thus far assumed, have been settled in South-Carolina by the concurring judgment of both the Chancery and Law Courts of Appeal; tribunals whose authority is equal to any in the Union.

[4.] Reserving the application of the rule to the case before us, for the present, I pass to a brief consideration of other grounds taken by the plaintiff's counsel. It is true that the Courts will benignly construe a paper which cannot take effect as a deed, into a will, in order that the intention of the testator may prevail in

Hester, Ex'r *vs.* Young.

cases where it is, according to law, a will. This position is fully recognised in the books. If the instrument is not a *deed* and at the same time not a *will*, the Courts will not violate the law and declare it to be either the one or the other; holding it far better, that in the particular case the intention of the maker should be defeated, than that the general law should be violated. Thus, in this case, we hold that this paper is not a deed, and so as far as the personal property is concerned, that it is a good will — but because it is not a valid will of real estate, not being sufficiently attested, we will not declare it a deed — nor will we, as to the land, nullify the Statute of Frauds, and pronounce it a will. The intention cannot override the law. In Kinard *vs.* Kinard, the paper was attested, as here, by only two witnesses — it was held not to be a deed, and at the same time not good as a devise, and good as a testament. The Court declaring "it must be recollected that the policy of the law requires three witnesses to a disposition of a man's estate, to take effect after his death, and we are bound to annul and defeat whatever contravenes that policy." 2 *Speers Eq. R.* 263. If this paper was intended by the maker to have a testamentary effect, as we believe it was intended, then we are not at liberty to vary its character — what was intended to be revocable, we have no right to make irrevocable — we have no right to withdraw from the maker that power of other final disposition which he has reserved to himself, and to give to this paper a present energy and effectiveness, which in itself it does not possess. *Dawson* vs. *Dawson, Rice Eq. R.* 260.

This court does not doubt that a remainder of personal chattels, may be limited over, to take effect after the termination of a life estate, by deed, and without a trust. That question does not occur here. In case of such limitation, the conveyance takes effect confessedly in the life time of the grantor, and there can be no question about the testamentary character of the act — but here, as by the terms of the instrument, it takes effect only on the death of the maker, the question does necessarily arise as to its testamentary character — and if upon a fair construction of the paper it is a *will*, it cannot in any possibility be also a *deed* limiting a remainder after a life estate. I hold that to constitute a good limitation of personal chattels after a life estate, the estate or interest must rest presently with the execution of the deed. The grantor must part with the property in the thing conveyed at the time of executing his deed; that is one thing: to execute a paper

giving property to another at his death, reserving a life estate and retaining the possession, is another thing. The former is a good limitation over of personalty — the latter is the case before us. If, in the case before us, the interest did in fact, as is argued, vest in the grantee, at the time the instrument was excuted, *with a postponement of the possession until a future day* — why then, what is it? surely not a limitation — it is an out and out gift to the grantee. But, say counsel, if remainders may be limited upon personal chattels by deed — why may not an estate be conveyed in them by deed to take effect upon the death of the grantor? *The* reply is found in the answer of the Court in *Vernon* vs. *Inabnit*, 2 *Brevard*, 414, to the same inquiry therein put; "to allow such gifts would be mischievous in the consequences which would result to creditors and subsequent purchasers. Besides, *cui bono*, what necessity for such gifts, when the same effects may be produced and the same object attained by a last will and testament."

As to the Statute of Uses, we have only to say, that in its *terms* it applies alone to real property, and has not, so far as we are informed either in England or in this country, by analogical reasoning or otherwise, been extended to personal property. Should the Legislature authorise gifts of personal property by deed, to take effect after the death of the grantor, with such safeguards as would insure against frauds, I am free to admit that there would, in that event, be no well founded objection to them upon the score of public policy. Had this Court the power, which we disclaim, to apply the Statute of Uses to personal property, we ought to hesitate before venturing to introduce a statute having its origin in feudal reasons, and prescribing a mode of conveyancing too subtle and indirect for the simplicity of our habits and the openness and uprightness of our institutions. The example of Lord Mansfield has been invoked to control the action of this Court, who, seizing upon great principles of justice or of policy, not embodied in the laws of England, engrafted them upon the jurisprudence of his country by judicial legislation. The age in which he lived was different from this age — the social condition of England, very different from ours — the science of law since that time has made wonderful progress, and more than all, the institutions under which we live are republican — those under which he lived were monarchical; according to our system, the power to *make laws* is *expressly* limited to the Legislature. Besides, Lord Mansfield was so great a man that his acts commanded approval on that account, where ours

Hester, Ex'r vs. Young.

would meet reprobation.   We know that our duty is to administer, and not to make the law.   We cannot hold this paper to be a deed of covenant to stand seised to uses.

Having laid down the rule for construing this paper, to [5.] wit, the intention of the maker as to the character of the estate to be conveyed, we come now to apply it.   Before doing so we further remark, that *the intention* is to be ascertained, not from any one or more clauses of the instrument, but from a fair consideration of all, taken together.   It is claimed that this was an absolute gift which took effect at the execution of the instrument, and that the use or enjoyment of the property, was postponed simply until after the death of the grantor and his wife; and if so, the instrument is not testamentary, but a deed.   In different phraseology — the absolute property passed to the grantee *eo instanti* in which the deed was executed, notwithstanding the reservation of the two life estates.   It will not be questioned that a verbal gift, unaccompanied with possession, is nothing more than a promise to give, not binding on the promissor.   Reducing it to writing, as we hope to show, only makes the writing testamentary.   Do the terms used in this instrument import the *present* transit of the interest in or title to the property named ?   The words *I do give* import an absolute present gift, and if they were not qualified and restricted by subsequent words, we admit, would leave the construction of the plaintiff in error unquestionable.   The language of the instrument is as follows: "Georgia, Effingham County, 19th day of June, in the year of our Lord one thousand eight hundred and twenty-six.   Know all men that I, William Womack, in consideration of natural love and affection for my son Frederick Womack, *I do give unto him the following property* (describing the property) *after my death and the death of my wife*, to have and to hold the said property forever.   In witness whereof &c."

Admitting *argumenti gratia*, that this is a deed, what constitutes technically the premises ?   We think the words " *I do give unto him the following property after my death and the death of my wife*."   And what the *habendum et tenendum?*  We think the words " *to have and to hold the said property forever*."   Transposing the words, the maker clearly meant to say, *after my death and the death of my wife I do give him the following property to have and to hold, &c*.   The words " *after my death and the death of my wife*." are restrictive of the words " *I do give unto him*," and obviously limit the gift to take effect after his death and the death of his wife and not before.

7

What then did William Womack *mean* to do? He meant that, at his death and the death of his wife, the property described should belong to his son Frederick, and not before. Where then was the title of the property during his life? It remained with him, the property itself was subject to his debts, to his alienation by deed, and this paper subject to revocation by subsequent testamentary disposition. What then is the character of the estate created? We answer an estate for life in the wife of the testator, (she sursiving him) with remainder to his son Frederick, to take effect at his death; and if at the death of the testator, his wife be also dead, then an absolute gift to his son Frederick, to take effect at his death. It seems to be scarcely possible to believe that the testator could *mean* any thing else, or that it did at all enter into his mind that during his life he had, by this paper, parted with the right of dominion over his property. That he firmly resolved that this paper should operate as a gift *at his death*, is clear; and no doubt he did intend to put the enjoyment of this property by his son, at his death, beyond the chances of accident, fraud or oversight. It is sufficient for our purposes however to know, that whatever else the maker did intend, he did certainly intend that this gift should not take effect until his death. And if he did so intend, then the paper is not a *deed*, but a *testamentary paper*.

But it is said that this instrument does not wear the *form* of a will; it has not the technical requisites of a *will*, and therefore it is not a *will*. To which I reply, there is no prescribed form necessary to the validity of a will. It is a settled point, that the form of a paper does not affect its title to probate, provided it is the intention of the deceased that it should operate after his death. 1 *Williams' Exec.* 59; 2 *Hagg.* 248; 2 *Vesey, Jr.* 231; 2 *Hagg.* 432; 3 *Hagg.* 220, 221; 3 *Atk.* 163; 1 *McCord*, 523.

Nor is the appointment of an executor necessary; without such appointment the will will be obligatory on him who has the administration. 1 *Williams' Exec.* 7.

Chancellor Kent defines a will to be "a disposition of real and personal property, to take effect after the death of the testator." 4 *Kent* 489. The Civil Law defines a will thus: " *Testamentum est voluntatis nostræ justa sententia de eo quod quis, post mortem suam, fieri velit.*" Which definition is substantially adopted by Swinburn, Godolphin and Blackstone. *Swinb.* Pt. 1 S. 2; *Godolph.* Pt. 1 C. 1 S. 2 *Black.* 499. The essence of which is *the declared intention of a man as to the disposition of his property at his death.*

It seems to this Court that the paper before us, fulfils all the requirements of either or all these definitions, and is testamentary in its character.

The only question remaining is this; the paper being testamentary, was it properly rejected for the want of probate? We think it was. The Inferior Court, sitting as a Court of Ordinary, by the constitution and laws of Georgia has original jurisdiction of the probate of wills. *Constitution State of Geo. art.* 3. *sec.* 6, *Prince* 910. *Princes Dig.* 239. 240.

When a Court of probate has jurisdiction, a Court of Common Law will not take notice of a will, as a title to personal property, till it has been proven; and when a will is required to be originally proven to the jury as documentary evidence of title, it is not permitted to be read, unless it bears the seal of the Ordinary, or some other mark of authentication — In England, nothing but the probate, or other proof tantamount thereto of the admission of the will in the Spiritual Court, is legal evidence of a will, in any question respecting personalty. In *Rex vs. the inhabitants of Netherseal,* Lord Kenyon holds the following language: "Nothing but the probate or letters of administration with the will annexed are legal evidence of the will, in all questions respecting personalty."

In *Pinney* vs. *Pinney, Tenterden, C. J.* remarks "Francis Pinney (who claimed as executor) could have no title as executor, unless the will was allowed by the Spiritual Court, and probate was obtained." In the same case Bayley, J. says "*non constat* that the will under which he (the plaintiff) claimed to be executor, is a valid will, unless it be allowed as such by the Spiritual Court.

*Greenleaf Ev. sec.* 518; 2 *Doug.* 707; 1 *Stark. R.* 343; *Shumway* vs. *Holbrook,* 1 *Pick.* 114; 2 *Phil. Evid.* 172; *Gorton* vs. *Dyson,* 1 *B. & B.* 221; *Pinney* vs. *Pinney,* 8 *Barn. & Cres.* 335; 1 *Will. Ex'rs* 172; *Rex* vs *Netherseal,* 4. *T. R.* 260.

Let the judgment of the Court below stand affirmed.