## BROWN v. MOORE.

1. A witness, through whom defendants claimed, testified in their behalf that he permitted S., since deceased, to remain on half of the land in dispute. *Held*, that this testimony was not incompetent under the proviso to section 400 of the Code, because (1) the plaintiffs were not claiming under S., but as purchasers in remainder after the termination of S.'s life-estate; and (2) the testimony was not as to a transaction with S., but related to an act of the witness.

2. Where plaintiffs sued for the recovery of land, claiming it as purchasers under a deed of M., since deceased, and there was no evidence to show who were the heirs of M., the Circuit Judge did not err in charging the jury that the plaintiffs could not recover as heirs at law of M.

3. In action for recovery of land, plaintiff must make out a complete title in himself, and cannot recover on the weakness of the defendant's; but where both claim under a common source, it is the better title thereunder that will determine the issue.

4. Whether a paper was intended to operate as a deed or as a will depended upon the fact of delivery. The Circuit Judge therefore properly submitted that question to the jury.

5. Plaintiffs cannot recover land under a deed from M., where defendants produce a paper under seal, executed by M. at a prior date, in which he acknowledges that he had conveyed the land to the defendants. The defendants need not further prove a deed from M. and its loss, but the plaintiffs, claiming under M., are estopped by his covenant and bound by his recitals.

6. This case distinguished from *Ellen* v. *Ellen*, 18 *S. C.*, 489.

7. Where a party recites that he has "deeded and conveyed" a tract of land, as against him it will be assumed that the conveyance was in fee.

8. The trial judge cannot charge upon facts disputed in evidence, nor express his opinion upon them. But he may say that no evidence has been offered upon one or all of the issues, if such be the fact.

9. The judge has the right to construe a written paper and determine its legal effect upon a party thereto and those claiming under him.

Before HUDSON, J., Spartanburg, September, 1886.

The paper introduced by defendants to defeat the plaintiffs' recovery was as follows:

STATE OF SOUTH CAROLINA. ⎱ Deed of
    Spartanburg District.    ⎰ Conveyance.

Witnesseth that the said John McCarter hath this day deeded and conveyed unto the said Daniel Robertson and Joseph Brown, a certain tract of land, to each, one hundred and fifty-four acres, and to John M. Collins a certain tract of two hundred acres, all the land lying in the State and district aforesaid, upon his part, and the said Daniel Robertson and Joseph Brown and John M. Collins do hereby covenant and agree on their part to pay to said John McCarter, to his wife Amy, or their order, during both or either of their natural lives, the sum of fifty dollars each annually, if so much should be necessary to provide a sufficient support of meat, drink, lodging, etc., in a comfortable manner for the said John McCarter and his wife Amy and all other family as he shall think proper to keep. Also all stock that he should keep. And, if so much should not be required, each party to pay an equal part of what shall be necessary to be provided, agreeable to the true intent of this article. Said McCarter having it discretionary in his power, or in his wife's power, to call for what sum they think necessary—provided, it does not exceed the fifty dollars per year.

In witness whereof the parties have hereunto set their hands and seals, this ninth day of June, 1818.

Signed in the presence of        JOHN McCARTER, [SEAL.]
    JAMES HENDRIX,               JOHN M. COLLINS, [SEAL.]
    J. WHITTEN.                  JOSEPH BROWN, [SEAL.]
                                 DANIEL ROBERTSON, [SEAL.]

Other matters are stated in the opinion.

*Mr. J. S. R. Thomson*, for appellants.

*Messrs. Bomar & Simpson*, contra.

February 28, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The action below was brought to recover real estate in the possession of the defendants, and claimed to belong in fee to the plaintiffs. It is admitted that the land in dispute at one time belonged to one John McCarter, and

the plaintiffs claim through a certain deed executed by the said McCarter in 1840, by which the land was conveyed to Sarah Brown, a daughter of McCarter, for life, and at her death to be equally divided between the heirs of her body, they being lineal descendents of the said Sarah. The defendants claimed through a deed alleged to have been executed by the said McCarter in 1818, to one Joseph Brown, sr., husband of the said Sarah, against whom a judgment was obtained in 18— under and by virtue of which the land was sold by the sheriff to one McMakin, who on account of a claim made by the said Sarah, after his purchase, gave to the said Sarah one half thereof, and then by successive conveyances from him and her the title came to the defendants.

There was little or no dispute as to the location or identity of the land. The main question in the case was the fact, whether or not John McCarter, the original owner, had conveyed to Joseph Brown, sr., in 1818, as alleged by the defendants, the judge holding that if such a conveyance had been executed, John McCarter's deed, in 1840, to his daughter Sarah was a nullity and conveyed nothing. There was no direct evidence of the actual execution of the conveyance in 1818. No deed was produced, nor was there positive testimony of its existence and loss.

The entire evidence upon the subject was a paper, a copy of which is found in the "Case," in which John McCarter stated under his hand and seal, and in the presence of witnesses, that for a certain consideration he had that day conveyed unto Daniel Robertson and Joseph Brown each, a tract of land containing 154 acres, * * and also a tract of 200 acres to John M. Collins. These parties were sons-in-law of McCarter, and the consideration implied was so much to be paid annually for the support of the said McCarter and his wife, &c. This paper seems to have been recorded.

His honor, Judge Hudson, ruled that this paper, containing a positive declaration by McCarter that he had conveyed the land to Joseph Brown, reciting solemn covenants, was an end of his title, and that in 1840, unless subsequent to 1818 there had been a re-conveyance to him, he had nothing to convey, and that the deed to Sarah Brown, therefore, was worthless. The paper above

was executed by John McCarter, Daniel Robertson, Collins, and Joseph Brown, each signing it under seal, in the presence of two witnesses.

The verdict was for the defendants. The plaintiffs have appealed upon twenty-one exceptions. Inasmuch, however, as many of these exceptions present the same idea, expressed in different forms, assigning error to his honor's ruling as to the effect of the paper of 1818, and inasmuch as appellants' counsel in his argument has condensed his exceptions into six propositions, we have not found it necessary to take up these exceptions *seriatim*, or to state them here fully, but we have confined our discussion of the case to the propositions of appellants.

1st. Appellants claim that "the testimony of James McMakin was inadmissible as to communications and transactions with Sarah Brown." McMakin was the party who purchased the land at sheriff's sale, under the judgment against Joseph Brown, sr., and while he was on the stand he was asked, whom he let stay on one-half of the land? It was perhaps known that he would say, Mrs. Brown (then deceased), and the plaintiffs objected, interposing section 400 of the Code. The judge replied, that this was no transaction; on the contrary, it was the absence of a transaction, and ruled the testimony competent. Section 400 of the Code excludes the evidence of a witness having an interest in the action, as to any communication or transaction * * with a party since deceased, *as against* a party then prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person. We do not see that the action here was prosecuted by any one as belonging to either of the classes mentioned. It is true that the plaintiffs are the heirs at law of Sarah Brown, but they are not prosecuting the action as such heirs. They claim the land as purchasers under the deed of their grandfather, John McCarter, executed in 1840, and they are endeavoring to set up title derived through that deed, and not as heirs of their mother, who only had a life estate under said deed. Independent of the ground upon which his honor ruled the evidence competent, the section relied on is inapplicable. But we think his honor was correct in holding that there was no such transaction or commu-

nication between McMakin and Mrs. Brown as this section would exclude. The matter was an act of the witness; there was no contract. The witness simply allowed Mrs. Brown to continue on one-half of the land.

2nd. "It was error to charge that the plaintiffs could not recover as heirs at law of John McCarter." The judge in charging upon this subject, after ruling that John McCarter had divested himself of title in 1818, as shown by the paper above, said that if John McCarter got the title back after that, then he died intestate and his heirs at law could recover, if anybody. But he said they could not recover in this action, because they had not sued as such; and more than this, there was no evidence as to who were the heirs at law of John McCarter, nor what proportion they were entitled to; that they were not before the court in that capacity, and even if John McCarter died intestate, the plaintiffs under the evidence in this case could not recover. The facts of the case fully sustain his honor's ruling, we think.

3rd. "When plaintiffs make a *prima facie* case, the onus is on the defendants to show other and better title and the boundaries of the latter." The object of exceptions in a case at law, is to bring before this court some question of law involved in the case, which the Circuit Judge erroneously charged or failed to charge on request. The Circuit Judge was requested to charge the proposition above. It does not appear that he did so directly. His charge was general, without referring in terms to any of the requests, and was doubtless intended to cover all the points materially involved. And we think it substantially embraced this proposition, if, indeed, such a proposition was applicable to the facts. Ordinarily in a land case, the plaintiff must make out a complete title, and must recover upon the strength of that title, and not upon the weakness of the title of his adversary, and there is no onus whatever upon the defendant. He may fold his arms, and await the complete title of the plaintiff, in default of which his possession cannot be disturbed. Where, however, both parties claim from a common source, the case will turn in favor of the one having the superior title. In such a case, there is a comparison of titles, the better ruling. And in such a case the principle contended for by appellants might apply. Here both par-

ties claimed from a common source, John McCarter, and the judge charged in substance, that if John McCarter had title in 1840, the plaintiffs were entitled to recover. In other words, that the burden was upon the defendants to show that John McCarter had become divested of all title before 1840, and this he held they had done by the paper of 1818. So that we do not see that plaintiffs have any cause of complaint that his honor did not charge this proposition in express terms, even admitting its applicability.

4th. "There was error in leaving to the jury as a matter of fact the question whether exhibit A of the complaint, put in testimony, was a will or deed, and the instructions relative thereto given to the jury were erroneous." It is true, the question whether exhibit A (the paper which John McCarter executed in 1840,) was a will or a deed was of importance to the plaintiffs, because, if intended as a will, not having three witnesses, it was a nullity, and nothing would have passed to them thereby, although McCarter may have had title at that time. But whether it was the one or the other, was not a matter of construction which the judge should have decided. It was a matter of intention depending upon delivery, which, being a question of fact, should have been and was properly left to the jury. The judge distinctly charged, that notwithstanding the peculiar language, yet if it was delivered and intended to take effect at once, it was a deed. This was the point of his charge on that subject, and we think it was free from error.

5th. "The admission of John McCarter in 1818, that he had conveyed one hundred and fifty-four acres of land, is not an admission that he had conveyed it in fee." This is really the crucial point in this case. If his honor was in error in his charge here, the case must go back, although he may have been right in all else ; and if he was right here, that paper (of 1818) would ultimately determine the case in favor of the defendants, because there is no substantial contest over the location, or any other matter, except the question whether John McCarter had title in 1840, when he executed the deed to Sarah Brown, and this depends upon the effect to be given to the paper of 1818. Was his honor right in holding, that that paper afforded conclusive

evidence, not only of a conveyance of the land to Joseph Brown, but also that the estate conveyed was a fee? That one claiming under a lost deed must prove the previous existence of such deed, its loss, and its contents, is well settled. But that is not the character of this case. The defendants have not attempted to set up a lost deed. They rely upon a solemn admission of the grantor executed under his seal and in the presence of witnesses, in which they claim that he acknowledged the execution of a deed, and that it conveyed the fee, and that this admission precludes any denial thereof, either by the grantor or those claiming under him; that it dispenses with any further evidence on the subject. If the plaintiffs here were strangers to John McCarter, and the defendants' title depended, as it does now, upon a deed from said McCarter, as one link in their chain, and said deed could not be produced, the doctrine above, that the existence of such deed, its loss, and contents should be clearly made out, would apply. But this contest is not a contest of that kind. On the contrary, it is the same, as to the principles of law involved, as if it was one between the defendants and John McCarter himself. The plaintiffs, claiming under John McCarter, stand in his shoes, being voluntary grantees, and can make no denial that he could not make. Could McCarter, if he was suing for the land, recover in the face of his solemn admissions, contained in the paper of 1818?

In *Ellen* v. *Ellen* (18 *S. C.*, 489), relied on by appellants, both parties claimed through one John McKenzie, sr. The deed of McKenzie, sr., to the defendant could not be produced. It was alleged to have been lost when Sherman's army passed through the State, and the important question was, whether such deed had ever been executed. A verbal admission to that effect from John McKenzie was introduced, and the defendant requested the presiding judge to instruct the jury that this admission was conclusive proof of the execution and contents of said deed. This he declined to do, but allowed the admission to go to the jury with the other testimony on that question, "leaving the jury to decide as to the effect of such declarations according to the weight or preponderance of the evidence." On appeal this court sustained the Circuit Judge. The difference, however, between that case and the one at bar is the fact that the admission here

is found in a solemn paper in the nature of a covenant between John McCarter and his three sons-in-law, executed under their seals and in the presence of two witnesses, in which is recited the fact that on that day the said John McCarter had deeded and conveyed, * * * and that the other parties thereby on their part covenanted and agreed, * * * the conveyance of the land no doubt being the consideration of the covenants to support, &c. There was no dispute as to the execution of this paper, and when introduced we think its construction became a matter for the court. It was really a contract, in part the consideration being the conveyance of the land, and the intent and meaning of which were for the court and not the jury. This distinguishes the present case from *Ellen and Ellen, supra.*

The Circuit Judge did not state distinctly to the jury his reasons for his ruling that the paper of 1818 shut out McCarter. He said that paper was an end of McCarter's title; that after its execution, of which there was no dispute, he "was out, gone," and that unless he was re-invested with title in some way afterwards, his deed in 1840 was a nullity. We think this ruling is sustained, first, on the ground of estoppel. If the admissions had been less solemn or had been merely verbal, they should have gone to the jury, subject to explanation and avoidance, as in *Ellen and Ellen;* but even in such a case, if they were disregarded by the jury, the verdict might be set aside. *Greenl. Evid.,* p. 286, § 204. But being in writing and under seal, they were conclusive upon the grantor and all claiming under him, and the Circuit Judge was right in so instructing.

Besides this, the doctrine of *recitals,* which is but another form of estoppel, appears to be applicable. "The recital of a deed in another deed is evidence of the recited deed, if the original is lost, against the party who executed the reciting deed, or against any person claiming under him." 2 *Phil. Evid.* (C. & H. & E. notes), 574. "Between such parties and privies, the deed or other matter recited needs not at any time to be otherwise proved, the recital of it in the subsequent deed being conclusive. It is not offered as secondary, but as primary, evidence, which cannot be averred against, and which forms a muniment of title." 1 *Greenl. Evid.,* 30, § 23.

On the principle that admissions of the character here made in reference to a conveyance of land should be taken most strongly against the grantor, we do not think there was error in the ruling of the Circuit Judge as to the estate conveyed.

6th. "His honor charged the jury in regard to matters of fact." It is conceded that a trial judge has no right under our constitution to charge upon facts—that is, to give his opinion to the jury in a law case that certain facts have been proved or not by the testimony introduced; nor, in the absence of a rule of law on the subject, has he the right to determine, in the first instance, the weight of testimony offered to prove the alleged facts, to wit, the facts of the complaint. These matters must be left to the jury. The appellants complain that the Circuit Judge disregarded these principles in the following particulars: 1st. That he gave his opinion that the land in dispute was covered by the conveyance of 1818, which they claim was one of the questions of fact in the case. 2nd. That he instructed the jury that John McCarter in 1818 had conveyed the fee to Joseph Brown. 3rd. That he said there was no evidence that McCarter ever got the title back, except the deed of 1840, which in itself was not sufficient. 4th. That as far as the evidence in the case goes, McCarter had no title in 1840. 5th. In answer to a question of the jury, he said that neither McCarter, nor those claiming under him, could get around the paper of 1818. 6th. "You will not have to inquire about the title of the Moores," &c., &c.

Specifications 2, 5, and 6 all hinge upon the right of the judge to construe the paper of 1818. We think he had the right to construe it, and to say to the jury that upon his construction John McCarter had conveyed a fee in 1818 to Joseph Brown, and that he and his heirs were estopped from denying that fact. This was not invading the province of the jury; it was announcing a principle of law.

As to 3 and 4. These complain that the judge said to the jury, that there was no evidence in the case on the point whether McCarter had got title back after 1818, except the deed of 1840, and that this was not sufficient. While a judge has no right to take from the jury the determination of what facts have been proved, yet he has the right to say that no evidence has been

offered on a certain point involved, or even as to the whole case, if such be the fact. It does not appear that the Circuit Judge went beyond this rule here.

As to the first specification. Had there been any serious contest in the case, that the land of which the defendants were in possession and which the plaintiffs claimed was the land originally owned by John McCarter, and which they claimed was conveyed by the deed of 1840 to Sarah Brown, &c., there would be some merit in this exception. But both of these parties claimed through John McCarter, a common source, thus admitting that the land in dispute was the same land formerly owned by the said McCarter, and the real issue between them was, which had the better title from McCarter, the defendants relying on the deed of 1818, and the plaintiffs on the deed of 1840. And his honor, in discussing the relative value of these two deeds, assumed that both covered the land in dispute. We do not think that in doing so he invaded the province of the jury as to the facts to such extent as requires this case to go back on that account.

The other specifications under this head need not be mentioned specifically. We have examined them all, and we do not think that his honor's charge is obnoxious to the complaint made.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.