JAMES P. DECKER, Appellant, v. ELIZA DECKER AND J. L. DECKER, and ELIZA DECKER AND J. L. DECKER, Appellants, v. WM. S. DECKER, Cross Petitioner, Appellant.

**Agreement to Deed:** REVOCATION: DELIVERY. Defendants agreed to support their father. In consideration he agreed to deed them certain lands and to record the deeds. These agreements and deeds were made when the father made his will and were deposited by him in a bank with instructions that the papers should be given to no one but himself. Defendants went into possession of the lands and thereon properly supported the father until he left without their fault. *Held*, the deeds were never delivered, neither were they testamentary or revocable. The contract in question and the intention of these deeds are enforceable in equity.

SUBSEQUENT PURCHASER: NOTICE. The father cancelled all said papers, first obtaining the consent of all his children, except defendants, and then deeded to others having notice of said contract and deeds. *Held*, the subsequent purchaser is not entitled to have title quieted against the claim of defendants, and a decree ordering the delivery and recording of the first deeds, the erasure of all marks of cancellation made by the father, and quieting title in defendants, was right.

*Appeal from Poweshiek District Court.*—HON. A. R. DEWEY, Judge.

WEDNESDAY, JANUARY 16, 1895.

Suit in equity to quiet plaintiff's title to certain real estate in Poweshiek county. The parties each claim to be the owner of the land through certain contracts and conveyances from one W. S. Decker. From a decree dismissing the plaintiff's petition, and defendant W. S. Decker's cross petition, the plaintiff and the cross petitioner appeal.—*Affirmed.*

*J. W. Carr* and *T. H. Milner* for appellants.

*John T. Scott* and *S. B. Gwin* for appellees.

Deemer, J.—This is an unfortunate controversy between relatives, with reference to their respective rights in and to a certain tract of land in Poweshiek county, heretofore owned by W. S. Decker, cross petitioner and appellant. The plaintiff claims title to the land under and by virtue of a quitclaim deed executed on or about September, 1891, and a warranty deed from W. S. Decker made on or about February, 1892. The defendants, Eliza Decker and J. L. Decker, claim title under and by virtue of certain contracts and leases made by W. S. Decker in the year 1889, and a warranty deed from W. S. Decker to Eliza Decker executed in July, 1890. The plaintiff and the cross petitioner, W. S. Decker, charge that the deed made in 1890 to Eliza Decker was never delivered, and is testamentary, and that the contracts and leases made between W. S. Decker and Eliza Decker are void, and the lease terminated. The lower court dismissed the plaintiff's and cross petitioner's petitions, and they appeal.

W. S. Decker has been twice married. His second wife died in August, 1889. W. S. Decker at that time lived upon the land in question, which was his home place, and with him resided his daughter Addie (by his second wife), who was then under the age of majority. Immediately after the death of the second wife, defendant Eliza Decker, the wife of J. L. Decker, a son of W. S. Decker by the first marriage, came to live with W. S., and has resided there ever since. It is claimed by defendants, J. L. and Eliza Decker, that about the time of the death of the second wife they were engaged in business at the town of Jewel Junc-

tion, and that at the request of W. S. Decker they
abandoned their business at this point, and Eliza went
to his place, at his instance and request, to keep house
and care for W. S. and his daughter Addie, with the
understanding and agreement that J. L. Decker should
soon follow and take charge of the farm; that they
(Eliza and J. L.) should have the use of the premises
during the life of W. S., and, in consideration of the
support given him, should receive absolute title to the
land at his death.    This is denied by W. S. Decker. He
claims that Eliza Decker voluntarily, came to his
place, and lived with him, without any promise on his
part, and that he did not agree to give her or her hus-
band either the use of or title to the farm. In the view we
take of the case, it is not necessary to determine which
of these contentions is correct, for the testimony shows
without dispute that some time in the next February
the parties entered into a written contract of lease,
which is dated October 12, 1889, and which provided,
in substance, for the leasing of the land in question by
W. S. Decker to Eliza and J. L. Decker for the term of
one or more years after October 12, 1889, in considera-
tion of the lessees properly and comfortably boarding
and providing for the lessor and his daughter in sick-
ness and in health; and further provided that "this
lease to continue for said consideration so long as said
lessees so provide for said W. S. Decker and his
daughter."    The lessor reserved the use of room for his
personal property, furniture, etc., and was to have feed
and stabling for a team of horses.    The lease also con-
tained this provision: "Said lessees to pay all taxes
assessed against the premises, the intention being that
whereas, the said W. S. Decker desires to abandon
farming on account of ill health and old age, the above
premises are given to said lessees in consideration of
giving and making a comfortable home and support to

said W. S. Decker and his daughter, suitable to their
condition and circumstances in life, and this lease to
continue so long as the above covenants are faithfully
observed." It is contended by the defendants that at
the time of the making of this lease it was orally
agreed that at the death of W. S. Decker the property
should pass to them absolutely. But this is denied by
W. S. Decker. We do not deem it necessary to deter-
mine which is right in this dispute, however, for we do
not regard it controlling. Sufficient is it to say that J.
L. Decker wound up his business at Jewel Junction,
and moved upon the place some time in the spring of
1890. Shortly after he went to live upon the farm, he
requested of W. S. Decker that he make a deed to the
farm, to be placed in escrow or otherwise delivered, so
that at the death of W. S. Decker he, J. L., and
his wife would get title to the land. This W. S.
refused to do, and, about the second day of
July, J. L. Decker left the premises, and went back to
Jewel Junction. W. S. Decker soon followed him
there, and, we are satisfied from the testimony,
induced J. L. Decker to return to the farm, under a
promise to make a deed to the land as agreed,
and place the same of record. We are abid-
ingly satisfied that, after making this promise to
J. L. Decker, that he (W. S. Decker) concluded to divide
up the remainder of his property among his children; for
we find him going to the office of a conveyancer, and
having deeds made for nearly, if not quite, all of his
land to James P., John W. (a half brother), to J. L.,
Addie (a half sister), and defendant's wife, Eliza. To
James P., he executed a deed for two hundred acres;
to John W., for one hundred and sixty; to Addie,
eighty; and to Eliza, two hundred and twenty. These
deeds all provided for the maintenance and support of
W. S. Decker during his life, and made it a charge and

lien upon the lands conveyed. At the time of the making of these deeds the grantees therein named entered into a written contract with W. S. Decker, by the terms of which the parties agreed as follows: Eliza Decker, in consideration of the conveyance to her, agreed to pay Francis Barton and Martha E. Meddough (daughters of W. S. Decker), the sum of two hundred dollars each within three years of the death of W. S. Decker. James P. Decker agreed to pay each of these parties one hundred dollars within two years after the death of W. S., and all agreed "to comfortably maintain and support the grantor, and care for and feed one team of horses while staying among his children" (signing the contract); "and also agreed that Addie Decker should have a home and board at the homestead" (being part of the land in controversy) "so long as she remains single and chooses to stay." At the same time W. S. Decker executed his will. The papers were all executed at the same time, and after their completion were placed in an envelope, and delivered to a bank at Belle Plaine. On the envelope was a notation: "Last Will and Testament of Wm. S. Decker; also with will herein contained four deeds." The envelope also bore this inscription: "Let no man on earth have this except W. S. Decker." At the time of the execution of the papers W. S. Decker was quite sick, and was confined to his bed. This, however, is a mere circumstance in the case; for we do not think his sickness in any way superinduced the execution of the papers. At the time of the execution of the documents and papers, W. S. Decker was residing with Eliza and J. L. Decker upon the home farm, and he continued to live there and receive his support, either under the original written lease or these new contracts, for about two years. Addie Decker remained some time later. About the time he left, W. S. Decker

says that Eliza and J. L. Decker attempted to poison him, and that he went away for that reason. We do not think there is anything in this claim. Indeed, it appears from the testimony that defendants furnished him a comfortable home during all the time he lived with them. They supplied all and more than was required of them by their contracts and agreements, and to this day are ready and willing to care for and support him, or furnish their proportion of the means needed to do so. We think W. S. Decker was wholly at fault in leaving the comfortable home provided for him by the defendants. After leaving the defendants' place, W. S. Decker went to live with the plaintiff, and shortly after making the change he went to the bank where the papers and documents before referred to were deposited, took them from the custody of the bank, and afterward burned or destroyed all but the contract for support and deed made to Eliza Decker. He evidently intended to destroy this last-named deed, but in going to the conveyancer's office, and having the papers changed, the deed in question was mislaid, and did not turn up until about the time litigation commenced over these transactions. He did, however, have the deed to Eliza Decker marked, "Canceled and declared void by W. S. Decker, September 22, 1891." At the time of this attempted cancellation, which was September 22, 1891, he executed a deed of bargain and sale without covenants of warranty to the land in question, to the plaintiff; but the same was not delivered until, as we think, he had secured the consent of all parties to whom he had made the former deeds, except the defendants. When their consent was obtained, he delivered the deed to the plaintiff. He also marked the contract for the payment of money to Mrs. Barton and to Mrs. Meddough, and for his support and maintenance, "Can-

celed by request of W. S. Decker, Sept. 22, 1891." In February, 1892, W. S. Decker made a warranty deed of the premises in question to the plaintiff, and it is under these two deeds that the plaintiff claims. He insists that the deed to defendants, of date July 18, 1890, to the land in controversy, was never delivered, and that the other papers executed at that time never became operative. He also contends that the deed executed to the children of W. S. Decker were testamentary in character, and that W. S. Decker had the right at any time to, and that he did, revoke them.

Without attempting to set out all the testimony upon which we make our findings, and contenting ourselves with stating conclusions only, we think that while there was no delivery of the defendants' deed at the time of its execution, either to the defendants directly or to the bank in escrow for them, yet there was a positive agreement made by them with W. S. Decker to deliver, by having them placed upon record within a few days. W. S. Decker was, as we have already seen, quite sick at this time, and we are satisfied from all of the testimony that he had all the papers placed in the bank simply for safekeeping, with the intention and agreement on his part to deliver the same in a short time, by taking them to the recorder's office and having them placed of record. We do not think that the deed to defendants was intended as a testamentary disposition of the property. If this was W. S. Decker's idea, it seems strange that he should get the consent of all the makers of the contract for his support, except the defendants, to its cancellation. Nor is it probable that he would have obtained their permission to cancel the deeds made to them. Moreover, it is evident that the transaction was not testamentary, because the senior Decker was receiving a consideration for the deeds

made to his children. They agreed to pay certain of the other children various sums of money; to support him as long as he should live, and furnish his youngest daughter, Addie, with a home in consideration for the deeds made to them. Defendants did all they obligated themselves to do; furnished him with support for nearly, if not quite, two years, and are ready to keep on doing so; and they furnished Addie with a home, as agreed, until near the time of this trial, when she left without excuse. It is quite clear that this transaction was not testamentary in character. The obligations between these parties were of contract, and could not be revoked by W. S. Decker, after he had received part of the consideration upon which the deeds were executed, without the consent of the defendants. Had the deeds been delivered to the bank, to be held until the death of W. S. Decker, and then delivered; or had they been intended as a disposition of the property to take effect upon his death; or even if no deeds had been made, but it was shown that the defendants took possession of the premises under an agreement to support W. S. Decker during his life, for which he agreed to give them the property at his death either by deed or will; and it was further made to appear that defendants performed their contract in part, and were ready and willing to comply with it according to its terms,—the plaintiff could not have his title quieted in the lands, for he knew of and was a party to these contracts. Such an agreement would be binding, and a court of equity would enforce it, even after the death of the promisor. Beach, Mod. Eq. Jur., section 602; *Carmichael v. Carmichael*, 72 Mich. 76, 40 N. W. Rep. 173; *Parsell v. Stryker*, 41 N. Y. 480, and cases cited; *Johnson v. Hubbell*, 10 N. J. Eq. 332. So that if we grant the plaintiff's claim, that the deed to defendant Eliza

Decker was never delivered, and was testamentary in character, yet he is in no position to ask that title be quieted in him under his deeds from W. S. Decker, because of the contract between the defendants and said Decker, made prior to the plaintiff's conveyance, and of which he had knowledge when he took the deeds, by the terms of which the land in question was to become the property of the defendants at some time in consideration of the support they agreed to give to the said Decker, and the other consideration named, which agreements they carried out in part, and are able and willing to continue the performance of. It is manifest, then, that neither plaintiff nor W. S. Decker is in position to have title to the land quieted in them as against the defendants.

The court below in its decree directed the delivery and recording of the deed made to defendant Eliza Decker, and the erasure therefrom of the marks of cancellation thereon; quieted the title to the land in the defendant Eliza Decker, as against plaintiff and the cross petitioner, W. S. Decker; and set aside and canceled plaintiff's deeds to the lands. This part of the decree is complained of. We are satisfied with it, because, as we have said, we think W. S. Decker agreed to deliver the deed to defendant Eliza Decker within a very short time after its execution, and that equity should decree him to do what he ought to have done. We do not think that W. S. Decker intended to hold the legal title and beneficial right to the land, while at the same time receiving support and maintenance under a contract made in consideration of the execution of a deed to the land to the defendants. Defendants remained upon the premises deeded to Eliza Decker, improved and otherwise used the same as their own, W. S. Decker living in the family and receiving his support as long as he would stay.

From the use of the land defendants derived the means with which to support W. S. Decker, and we think they were there under a conveyance from W. S. Decker which he intended to have present effect. He has now changed his mind, and attempted to cancel the deed, but we think the cancellation should be held of no effect, and that the title of defendant Eliza Decker should be established in the land. We are very clearly of the opinion that plaintiff is not entitled to the relief demanded by him, and are well satisfied with the decree entered by the lower court, which seems to us to fully protect the rights of all parties. The decree of the District Court is *affirmed*.