Edwards et al. *v.* Smith.

---

R. O. EDWARDS et al. *v.* WILLIAM SMITH.

WILL: INSTRUMENT NOT DESIGNED AS SUCH NOT ADMISSIBLE TO PROBATE.—An instrument intended by the maker to operate as a deed, will not be entitled to probate as a will, although it may be inoperative as a deed.

APPEAL from the Court of Probates of Madison county. Hon. J. M. Simmons, judge.

Upon the petition of William Smith, who alleged he was a cre-

ditor of L. F. Henderson, the appellants, R. O. Edwards and Jefferson Love, were required to produce in the court below, for probate, the following instrument: "Know all men by these presents, that I, L. F. Henderson, of the county of Madison, State of Mississippi, in view of the strong probabilities of my early dissolution, and a desire to secure my friends in their just rights, do hereby convey all of [my] estate, both real and personal, consisting of lands, tenements, and chattels, to Jefferson Love, of Madison county, Mississippi, and R. O. Edwards, of Hinds county, Mississippi, in fee simple, to be held by the said Jefferson Love and R. O. Edwards, until all my debts, to which they are securities, are satisfied. I furthermore request, that Jefferson Love shall take charge of Thomas Speakman, and give him as good an education as the country affords. Given under my hand and seal, this the 17th day of November, A. D. 1857.

"Signed,          LAWSON F. HENDERSON.
" Witness : G. J. HULME,
        " WM. M. CATLETT,
        " THOS. A. PHILIPS,
        " G. W. CAMPBELL."

Edwards and Love resisted the probate of the instrument, upon the ground that it was a deed, and not a will.

On the trial, Dr. T. A. Philips stated, that on the day of the date of the instrument he was in attendance on Henderson, who was then sick, and nearly blind ; he told witness to request all persons in the room to withdraw, and then said to witness that he wished him to prepare a paper for him, and directed witness to send for Esquire Hueston, a justice of the peace in the neighborhood ; he also requested witness to send for his (H.'s) sister, and for Jefferson Love. Witness learned from Henderson in this conversation, what provisions he wished the instrument to contain, and then wrote one ; but Henderson was not satisfied with the language used. Witness then sat down near Henderson, and wrote the above instrument, Henderson dictating the language. Whilst witness was reading it over to Henderson, the persons whose names are appended as witnesses came in, and Henderson signed the instrument in their presence, and requested them to sign it as witnesses, which they did in his presence, and in the presence of each other.

He was then perfectly rational. Henderson had some difficulty in seeing where to sign, as he was nearly blind, and his vision caused him to see double. The scroll near the body of his signature looks like a seal, though he has no recollection of Henderson' speaking of a seal or scroll. Witness remembered that he read over the whole instrument to Henderson before he signed it, including the part which speaks of the instrument being given under his hand and seal.

Witness further stated, that Hueston did not get there, and was not present when the instrument was executed. When the persons who subscribed it as witnesses came in the room, Henderson "said something about fearing that he might not live until Hueston came, or might not then be in a situation to execute it, and that he wished those gentlemen to sign as witnesses, and that the instrument would all be fixed up when Hueston came."

The subscribing witnesses all testified, that Henderson signed the instrument in their presence on the day of its date, and that at his request they attested the same ; they also stated, that Henderson said that Hueston "would be there after a while, and fix it up."

It was also proven by one of the subscribing witnesses, that the instrument lay for a while after its execution on Henderson's bed, and it was handed by another of the witnesses to Catlett, and that two nights after its execution, Henderson asked Catlett (his overseer), where it was, and he told Henderson that he had locked it up ; Henderson then said to Catlett, " to hold on to it, and keep it ; that Edwards and Love were his (H.'s) friends, and they ' would do to tie to,' and that the instrument would protect them."

The instrument was admitted to probate as a will, and Edwards and Love appealed.

*Davis* and *Hill*, for appellants,
Cited *Verplank* v. *Sterry*, 12 J. R. 536 ; *Doe* v. *Knight*, 5 B. & C. 671 ; 12 E. C. L. R. 351 ; *Wall* v. *Wall*, 30 Miss. R. 92.

*W. T. Withers*, for appellee.
No particular form is essential to the validity of a will. 1 Jarman on Wills, 12 *et seq.* and notes.
It may be in the form of a deed, provided it is shown, either by

the terms of the writing itself, or from extrinsic evidence, that it is not to take effect until after the death of the grantor.  *Wall* v. *Wall,* 30 Miss. R. 91 ; 2 Howard Miss. R. 701–10 ; Yerger, 321 ; 1 Phill. 1, and cases cited.  Under such circumstances, if the writing cannot operate as a deed, it will be operative as a will.  2 Williams Ex'rs, 59.  Or it may be in the form of a bond (2 Hagg. 235), or of letters.  10 S. & M. 623 ; 1 Johns. Ch. R. 153 ; 6 Gill. & John. 25.

The writing admitted to probate, shows, on its face, that it was executed by the testator, "in view of the strong probabilities of his early dissolution."

It also contains a request that Jefferson Love should take in charge Thomas Speakman, and give him as good an education as the county affords.  These provisions show clearly that it was not intended to be operative during the life of the decedent.  It was left in charge of a personal friend and business agent of decedent, and was not delivered to appellants.  The writing has not the formalities of a deed, but has all the essentials of a will, and unless held to be a will, the intention of the decedent may be · entirely defeated.

PER CURIAM.

The question in this case is whether the instrument admitted to probate, as the last will and testament of L. F. Henderson, deceased, was designed by the deceased to operate as a will, or as a deed.

We are of opinion that it was intended to operate as a deed, and whether it can so operate or not, it cannot be regarded as a will, for the reason that it was not designed as such.

Decree reversed.