# COFFEY'S

# PROBATE DECISIONS.

ESTATE OF CHARLES WILLIAMS, DECEASED.

[No. 15,564; decided September 10, 1895.]

**Wills—Technicalities of Execution—Acknowledgment.**—The technicalities of the law relating to the making of wills are deemed to have been satisfied where the circumstances surrounding the transaction show a substantial compliance, and that compliance need not consist of words or even gestures, but may find its legal expression in silence and acquiescence. This is particularly true as to the acknowledgment of the signature.

**Wills.—The Acknowledgment of His Signature** by a testator is not required to be made in any particular words or in any specified manner, but if, by sign, motion, conduct or attending circumstances, the attesting witness is given to understand that the testator has already subscribed the instrument, this is a sufficient acknowledgment.

**Wills—Testimony of Subscribing Witnesses.**—The comparative powers of remembering legal details in the execution of wills, possessed by professional and laical minds, is commented upon by the court in considering the testimony of subscribing witnesses.

Matt. I. Sullivan for the contestant, daughter of decedent and sole heir at law:

Julius Reimer, for the executor.

Gustav Gutsch, for the legatee.

COFFEY, J. On the eighteenth day of January, 1895, Charles Williams, a resident of the city and county of San Francisco, state of California, died, leaving estate.

On the nineteenth day of January, 1895, an instrument purporting to be the last will of said Charles Williams and to

(1)

have been executed and attested on January 21, 1892, was filed in this court by G. T. Knopf, therein named as executor, together with a petition for probate. Mary E. Madden, formerly Mary E. Williams, a daughter of the deceased, opposes the petition upon the alleged ground that the instrument was not executed in accordance with the provisions of section 1276, Civil Code.

By the terms of the instrument, the sum of one thousand dollars is given to one Nicolaus Sinn, a distant relative of the deceased, the gold watch and chain of the deceased to the said G. T. Knopf, and the residue of the estate to the said G. T. Knopf in trust for said Mary E. Williams, to be paid to her in monthly installments of not more than twenty-five dollars.

The subscribing witnesses to the will are the said G. T. Knopf and one Julia M. Coffey. Their attestation recites the facts required by section 1276, Civil Code, and is followed by a certificate of John F. Lyons, a notary public, in the usual form of a certificate of acknowledgment of a deed, to the effect that Charles Williams, on the date of the instrument, duly acknowledged to the notary that he executed the same freely and voluntarily and for the uses and purposes therein mentioned.

The sanity of the testator at the time of the execution of the instrument was established by sufficient evidence.

It is admitted that the bequest of the gold watch and chain to G. T. Knopf is void under section 1282, Civil Code.

Issue was joined, and the matter was heard on April 18, 1895. Five witnesses were examined, viz., Mrs. Julia M. Coffey and G. T. Knopf, the subscribing witnesses, John F. Lyons, the notary, Mary E. Madden, the contestant, and Henry A. Madden, her husband.

Julia M. Coffey testified that on the twenty-first day of January, 1892, the date of the instrument, she had a desk-room at No. 607 Montgomery street, in the city of San Francisco, within the railing which inclosed the office of Mr. Lyons, and about fifteen feet from the latter's desk, which occupied the front of the store; that she was sitting at her desk on that day when Mr. Lyons called her to his desk—called her "loud enough that she heard him from where she was sitting" (Transcript, p. 15); that there were two men, besides Mr.

Lyons, standing at Mr. Lyons' desk, and that they could hear him call her (Transcript, p. 15); that Mr. Lyons then and there requested her to sign her name as a witness to the instrument in question and told her it was a will (Transcript, p. 4); that she took the pen and, either standing or sitting at Mr. Lyons' desk, signed it, while Mr. Lyons and the two other men were standing by—"standing right near the desk somewhere" (p. 4)—"right beside her" (p. 13)—"right by the desk and around by the desk" (p. 16)—and therefore were able to, and probably did, see her sign it (p. 15); that after signing her name she went back to her desk (p. 72), and that she did not remember the appearance of the deceased (p. 8), nor whether he said anything (p. 22), nor other facts, testified to by Mr. Lyons (infra) as having occurred at the time (p. 72).

G. T. Knopf, the other subscribing witness, testified that he wrote out the will at the request of the deceased, using a printed blank for that purpose (p. 29); that he and the deceased went together to the office of the notary, Mr. Lyons, with the instrument, being then under the impression that the same, to be valid, must be acknowledged like a deed (p. 31); that Mr. Lyons, when they saw him, advised them as to how many witnesses would be necessary (p. 45), and that an acknowledgment "did not hold," but would not hurt (p. 46); that Mr. Lyons asked Mr. Williams if this was his last will, and Williams said "yes" and then signed it; that Julia M. Coffey, at the time he signed it, was sitting at her desk, about fifteen feet away (p. 23); that Williams requested him, Knopf, to sign as a witness (p. 33); that Williams and the witness signed before Mrs. Coffey did (pp. 33, 34); that the deceased, at the time the instrument was executed, declared it to be his will (p. 32); that Mr. Lyons called Mrs. Coffey over and introduced her to Mr. Williams (pp. 34, 35), and that Mr. Williams said to Mrs. Coffey that that was his last will (p. 42); that when Mr. Lyons asked Mrs. Coffey to be a witness, Mr. Williams could hear his request (p. 37); that the deceased signed in the presence of witness and of Mr. Lyons, on Mr. Lyons' desk (p. 49); that Mrs. Coffey, in the presence of both the deceased and the witness, signed the instrument about half a minute after they had signed it (pp. 28, 49);

and that he, the witness, did not remember all the many details of the transaction (p. 28).

John F. Lyons, on direct examination, testified as follows:

"Well, on this day [January 21, 1892], a Mr. Knopf, whom I was acquainted with for years, brought this gentleman Williams, whom I had never seen before, and presented this instrument, saying that this was the last will and testament of Mr. Williams, and that he wanted it acknowledged; I looked at it and asked him if he had any witnesses. He said he had Mr. Knopf, and he did not have any other. Well, Mr. Williams, I asked him to sign it at my desk and he sat down and wrote it; and then also Mr. Knopf signed it; and I called Mrs. Coffey up and introduced her to Mr. Williams; and I told Mrs. Coffey that this was Mr. Williams' last will and testament, and that was his signature, he had just signed it, and Mr. Williams wanted her to sign it as a witness to his last will and testament. And I said, 'Mrs. Coffey, this is his signature'; and I said to Mr. Williams also, 'Is that not your signature?' Says he: 'Yes. Do you want Mrs. Coffey to sign it?' He replied in the affirmative, or made an affirmative answer of some kind, and so she signed that." (Transcript, p. 58.)

On cross-examination, Mr. Lyons admitted having made statements to Mrs. Julia M. Coffey, to Mr. and Mrs. Madden and to the counsel for the contestant, substantially to the effect that he did not remember the circumstances of the transaction. The witness, in explanation, testified that since making the statements he had looked at his records, that "these things generally came back to him after a while when he got a chance to think of them" (p. 61); and that, by refreshing his memory, he might distinctly testify as to circumstances attending the execution of any will drawn or signed in his office more than two years ago (p. 64). Being further questioned on the subject by contestant's counsel, the witness swore that it was his invariable practice to refer to signatures where wills were signed in the absence of witnesses (p. 63), but that, independently of his practice, he distinctly remembered having called Mrs. Coffey's attention to the signature of the deceased and that Mr. Williams acknowledged the same

to her as his signature (pp. 64, 63). In answer to questions by the court, the witness testified as follows (pp. 66, 67, 68):

"Q. Mr. Williams' signature was appended to that instrument when he came in with Mr. Knopf? A. No, sir, it was not; it was signed in my presence.

"Q. It was signed in your presence and at your desk? A. Yes, sir.

"Q. Then Mr. Knopf signed it? A. Yes, sir.

"Q. That was before you called Mrs. Coffey, was it? A. Yes, sir.

"Q. Then you called her up? A. Yes, sir.

"Q. What occurred, if anything, between her and Charles Williams? A. I don't recollect.

"Q. You are sure she did not see him sign Charles Williams, his name? A. She came.

"Q. She did not see him sign? A. No, sir, I don't think she did.

"Q. Nor did she see Mr. Knopf sign? A. No, sir, I don't think so.

"Q. When she came, you called her up about fifteen feet away? A. Yes, sir, about that, I think.

"Q. Give me the tone of voice, the very expression you used when you called her. A. Says I: 'Mrs. Coffey, will you step this way and act as a witness?'

"Q. You said it in just that way? A. Something similar.

"Q. You called her up and asked her to acknowledge it, did you say? A. No, sir, as a witness. I did not tell her what it was until she came up to my desk.

"Q. She did come from her desk; her desk was on the inside? A. Yes, sir, the further end of my office.

"Q. And she came up, and then what occurred? A. I introduced her to Mr. Williams.

"Q. In what manner; what did you say? A. The usual introduction.

"Q. What was it? I don't know what was the usual introduction in your office. A. 'Mrs. Coffey, this is Mr. Williams, Charles Williams. This is his last will and testament, and he declared it in the presence of us.'

"Q. You said this all of your motion? A. I used the words of the attestation as near as I could.

"Q. You did? A. Without repeating it.

"Q. Say that again, without repeating them. Say now what you said at that time to Mrs. Coffey in the presence and hearing of Mr. Williams. A. 'Mr. Williams declares this to be his last will and testament and he wishes you to act as a witness to his signature for this instrument, which he has just signed'; something like that, not the words exactly.

"Q. That is just about what you said? A. Yes, sir.

"Q. Did Mr. Williams say anything then? A. I don't recollect. He affirmed what I said.

"Q. How did he affirm it? A. By acquiescing.

"Q. Did he say anything? A. Yes, sir, he nodded his head, or something of that kind. I don't recollect." (pp. 66, 68.)

Henry A. Madden, husband of the contestant, testified that about three days after Mr. Williams was buried he, the witness, with his wife, called on Mr. Lyons, presented to him a copy of the will and asked him if he knew anything about it, to which Mr. Lyons replied that it was "a thing foreign to him"; that Mr. Lyons subsequently pulled forth his ledger, looked over it, saw the name, and said that he remembered about it; that on a later occasion, when witness with his wife and Mrs. Coffey called on Mr. Lyons, the latter said that they had been "down and bothering" him about the matter and that he did not know "the first thing about it at all" (pp. 78, 79); that, on a still later occasion, the witness again went to see Mr. Lyons, alone this time, and Mr. Lyons said: "The will is all right. I know all about the will, and the will is all right." (p. 80.)

Mrs. Mary E. Madden, the contestant, in substance, confirmed the testimony of her husband touching the conversation had with Mr. Lyons upon the occasion of their joint visit to his office.

The answers of John F. Lyons to the questions addressed to him by the court probably state the actual facts as accurrately as any witness could be expected to remember them after a lapse of more than three years. Mrs. Coffey knew neither Mr. Williams nor Mr. Knopf; she was busy at her desk when she was called; she came over, understood what was wanted, signed her name as a witness, and immediately returned to her own work. Mr. Knopf, when he came to the

notary's office, was under the impression that a will, to be valid, had to be acknowledged like a deed. As a layman he was unacquainted with the law referring to the execution of wills or with the importance of observing the formalities required by section 1276, Civil Code. The legal details of the transaction, including the particular form and succession of declarations, so noticeable to a legal mind, naturally failed to attract his special attention or to impress themselves strongly or clearly upon his memory. Hence, the indefiniteness of his testimony on some points, as, e. g., his failure to recollect whether the deceased declared the instrument his will before or after he signed it. "I don't think there is any difference, he meant to say that" (after he signed it—p. 28). John F. Lyons, however, who, in the course of his business, had learned how a will must be made under the law, and to whom the parties applied in his professional capacity for the very purpose of making a will according to law, would naturally pay attention to those important details, and they would impress themselves upon his mind, though he might forget the face of the principal party. They might lie dormant in his memory. Professional men frequently, and in some cases intentionally, allow legal matters to vanish from their ever-ready recollection, and then, while engaged in other matters, or having no particular interest in exerting themselves for the sake of recalling facts immaterial to them, find it troublesome to be interviewed in regard to such matters, particularly by strangers. What would be more available to a man thus annoyed, as a means of escape from such questions, than to answer that he does not know "the first thing" about the transaction? This was the case of Mr. Lyons precisely. When he was subpoenaed as a witness (by the proponent of the will) and knew that he would be compelled to testify upon oath, he refreshed his memory by making an effort to do so; and gradually, one after another, the facts reappeared in his mind. His testimony is positive and distinct on all points necessary to establish the validity of the will. He is not contradicted by the testimony of Mr. and Mrs. Madden referring to his statements made to them; for he had substantially admitted the statements before the others were called on the stand. The fact that Mrs. Julia M.

Coffey did not remember certain circumstances, if they occurred (p. 75), probably because she took no interest (p. 74, last line), does not contradict the affirmative answers of Mr. Lyons. The evidence, on the whole, shows no necessary or substantial conflict with Mr. Lyons' testimony; his reputation has not been attacked; and the court, therefore, is bound to accept his testimony as true.

Particular stress must be laid upon the fact that according to every witness present at the transaction, not excluding Mrs. Julia M. Coffey, whatever was done and said at the time occurred within the sight and hearing of the deceased. No question is raised as to his intention to make the instrument then and there executed by him his last will and testament. The fairness of its provisions, which (apart from the legacy of $1,000), were evidently intended for the benefit of his daughter, the contestant, herself, is not disputed. Her opposition on the ground that the deceased was mentally unsound has been withdrawn (p. 70). The contest concerns only his compliance, in detail, with all the technicalities of the law.

It is a settled rule that the technicalities of the law relating to the making of wills are deemed to have been satisfied where the circumstances surrounding the transaction show a substantial compliance, and that that compliance need not consist of words or even gestures, but may find its legal expression in silence and acquiescence.

This is particularly true as regards the acknowledgment of the signature.

"The acknowledgment is not required to be made in any particular words or in any specified manner, but if, by sign, motion, *conduct or attending circumstances,* the attesting witness is given to understand that the testator had already subscribed the instrument, it is sufficient acknowledgment": Luper v. Werts, 19 Or. 122, 23 Pac. 850, 7 Am. Prob. Rep. 256.

"As to request to sign as witnesses—the request may be words or signs. It may be implied. For instance—if I am about making a will, it is a good request if I by words make the request; it is good, if the request is made for me by another, I understanding the matter and acting in accordance with the making of the request. No particular form of re-

quest is necessary. It may be implied from acts. Anything which conveys to the witnesses the idea that I desire them to be witnesses is a good request. Even a knowing acquiescence may be equivalent to an actual request in words'': Estate of Howard Crittenden, Myr. Prob. Rep. 54, 55.

''The request need not be formally expressed in words; an act or sign will suffice, and it may be made either by the testator himself or by some one acting for him, in his presence and hearing'': Beach on Law of Wills, sec. 46, and a large number of authorities cited in notes 2 and 3.

The case of the Will of Humphreys, Tuck. Sur. Rep. (N. Y.) 142, was in all its essential features almost identical with the case under consideration. It sustains, in felicitous language, the observations made above on the comparative powers of remembering legal details, possessed by professional and by laical minds. It holds that the evidence of a professional man in such case, swearing that all the formalities were observed, is more reliable than the evidence of two other witnesses, ladies, not remembering a portion of the proceeding. It attaches to the attestation clause, certifying the observance of the necessary formalities, the presumption ''omnia esse rite acta''—a view which must have formed the basis of the ruling affirmed by the supreme court of this state in Estate of Gharky, 57 Cal. 280.

----

## WHAT CONSTITUTES A TESTAMENTARY WRITING.

### General Requisites and Essentials.

Definition of Will.—''A will is commonly defined as an instrument by which one makes a disposition of his property to take effect after his death, or as a declaration of one's intention as to the manner in which he would have his property disposed of after his death. These definitions make the disposition of property an essential feature of a will, whereas an instrument merely appointing an executor, without making any bequest or devise of property, may, nevertheless, be a will. More accurately defined, a will is the legal declaration of the intention of a person, which he wills to be performed after his death, in respect to the distribution of his property, the administration of his estate, or the guardianship of his children. The generic term 'will' includes codicil'': 1 Ross on Probate Law and Practice, 1.

Some authorities have thought that an instrument appointing a guardian for the children of the maker, without any disposition of

property, is not entitled to probate as a will: Williams v. Noland, 10 Tex. Civ. App. 629, 32 S. W. 328; In the Goods of Morton, 3 Swab. & T. 422. And it has been affirmed that an instrument excluding a son of the author from participation in his estate, yet making no disposition thereof, is not a will: Coffman v. Coffman, 85 Va. 459, 8 S. E. 672. Some courts have supposed that a man cannot dispose of his dead body by will, on the theory that there is no property in it: Enos v. Snyder, 131 Cal. 68, 82 Am. St. Rep. 330, 63 Pac. 170; Williams v. Williams, L. R. 20 Ch. D. 659. Compare the note to Keyes v. Konkel, 75 Am. St. Rep. 425.

Essential Characteristics.—The essential characteristic of a will is, that it operates only upon and by reason of the death of the maker. Up to that time it is ambulatory and revocable. By its execution the author has parted with no rights nor devested himself of no interest in or control over his property, and no rights have accrued to, and no estate has vested in, any other person. The death of the maker for the first time establishes the character of the instrument. It then ceases to be ambulatory, acquires a fixed status, and operates as a transfer of title. An instrument which is to operate in the lifetime of the donor, and to pass an interest in his property before his death, even though its absolute enjoyment by the donee is postponed till the death of the donor, or even if it is contingent upon the survivorship of the donee, is a deed, contract, gift, or some instrument other than a will. It is essential to a will that it should be made to depend upon the death of the maker to consummate it, up to which time it is inoperative and revocable: Gillham v. Mustin, 42 Ala. 365; Daniel v. Hill, 52 Ala. 430; Refeld v. Bellette, 14 Ark. 148; Nichols v. Emery, 109 Cal. 323, 50 Am. St. Rep. 43, 41 Pac. 1089; Kirkpatrick v. Kirkpatrick, 6 Houst. (Del.) 569; Jones v. Morgan, 13 Ga. 515; Pelley v. Earles (Ky.), 55 S. W. 550; Carey v. Dennis, 13 Md. 1; McDaniel v. Johns, 45 Miss. 632; O'Day v. Meadows, 194 Mo. 588, 112 Am. St. Rep. 542, 92 S. W. 637; Teske v. Dittberner, 65 Neb. 167, 101 Am. St. Rep. 614, 91 N. W. 188; Matter of Diez, 50 N. Y. 88; Rochester Sav. Bank v. Bailey, 34 Misc. Rep. 247, 69 N. Y. Supp. 163; Egerton v. Carr, 94 N. C. 648, 55 Am. Rep. 630; Patterson v. English, 71 Pa. 454; Sunday's Estate, 167 Pa. 30, 31 Atl. 353; Kinard v. Kinard, Spear Eq. 256; Roberts v. Coleman, 37 W. Va. 143, 16 S. E. 482; In the Goods of Robinson, L. R. 1 Pro. & D. 386.

### Rules of Construction.

In General.—The rule of construction in determining whether an instrument is a will or contract is, that if it passes a present interest, it is a deed or contract; but if it does not pass an interest or right until the death of the maker, it is a testamentary paper. And in ascertaining whether an instrument is a testament or a contract, courts do not allow the use of language peculiar to either class of instruments, nor even the belief of the maker as to the character of

the instrument to control inflexibly their construction of it; but giving due weight to these circumstances, courts look further, and weighing all the language as well as the facts and circumstances surrounding the parties and attending the execution of the instrument, give to it such a construction as will effectuate the manifest intention of the maker: Clarke v. Ransom, 50 Cal. 595; Burlington University v. Barrett, 22 Iowa, 60, 92 Am. Dec. 376.

Intention of the Maker.—It is the animus testandi that makes an instrument a will. When the animus testandi is established, the character of the instrument is fixed—it is a will. In the absence òf a testamentary intent, there can be no will. A·paper, to be a will, must be intended to take effect as a testamentary document: Estate of Meade, 118 Cal. 428, 62 Am. St. Rep. 244, 50 Pac. 544; Estate of Scott, 128 Cal. 57, 60 Pac. 527; In re Estate of Longer, 108 Iowa, 34, 75 Am. St. Rep. 206, 78 N. W. 834; Lyles v. Lyles, 2 Nott & McC. 531; Ferguson-Davie v. Ferguson-Davie, 15 Prob. Div. 109. It is the settled intention of a man to pass his property in a certain way after his death that constitutes an instrument a will: Boling v. Boling, 22 Ala. 826. The true test is not the testator's realization that it is a will, but his intention to create a revocable disposition of his property to accrue and take effect after his death, and passing no present interest: Kenney v. Parks (Cal.), 54 Pac. 251. When an instrument on its face is imperfect and equivocal, the presumption is against its operating as· testamentary, unless it is made clearly to appear that it was executed animo testandi, or being intended by the author to operate as a posthumous disposition of his estate. Nevertheless, courts have inclined to solve doubtful cases by giving such instruments a testamentary effect when necessary to prevent the defeat of their legal operation: Rice v. Rice, 68 Ala. 216. See, too, Kelleher v. Kernan, 60 Md. 440.

The intention of the maker, then, is the controlling consideration in construing an instrument of doubtful testamentary character. This intention usually is to be gathered from the terms of the entire instrument, construed together, and always so when its provisions are plain and clear, but extrinsic evidence may be received to enable the court to place itself in the position of the parties in order to interpret doubtful and ambiguous provisions. The intention may be ascertained, not only from the instrument itself, but from all the facts and circumstances surrounding the parties and attending the execution of the instrument: Rice v. Rice, 68 Ala. 216; Tuttle v. Raish (Iowa), 90 N. W. 66; Beebe v. McKenzie, 19 Or. 296, 24 Pac. 236; Kisecker's Estate, 190 Pa. 476, 42 Atl. 886; Parker v. Stephens (Tex. Civ. App.), 39 S. W. 164. Parol evidence may be received to aid in arriving at the intention of the maker and the character of the instrument, when such intention is not clearly and satisfactorily expressed in the writing itself: Clarke v. Ransom, 50 Cal. 595; Kelleher v. Kernan, 60 Md. 440; Egerton v. Carr, 94

N. C. 648, 55 Am. Rep. 630; Witherspoon v. Witherspoon, 2 McCord, 520. Such evidence is admissible to show that the maker did not, at the time of signing an instrument, understand it was a will or intend that it should operate as such: Barker v. Comins, 110 Mass. 477, 488. Testimony of his conversation at that time may be received to show his intention: Wareham v. Seller, 9 Gill & J. 98.

### Testamentary Writings in Various Forms.

**Materiality of Form in General.**—It is well understood that the formalities prescribed by statute in the execution of wills must be substantially observed in order to make them effective and valid testamentary instruments: In re Walker, 110 Cal. 387, 52 Am. St. Rep. 104, 42 Pac. 815; Chaffee v. Baptist Missionary Convention, 10 Paige, 85, 40 Am. Dec. 225; Peake v. Jenkins, 80 Va. 293; Roberts v. Coleman, 37 W. Va. 143, 16 S. E. 482. However, if the statutory requirements are complied with in the execution of an instrument, its form is of little consequence in determining whether or not it is testamentary: Lautenschager v. Lautenschager, 80 Mich. 285. 45 N. W. 147; Ferris v. Neville, 127 Mich. 444, 89 Am. St. Rep. 480, 86 N. W. 960. But while courts indulge in no inconsiderable liberality in construing and giving effect to the intent of testamentary papers without strict requirements of form and technicality, of course not every writing rises to the dignity of a testamentary instrument. If an instrument is neither testamentary in form nor substance, there is no intrinsic evidence that it was intended as a will; and if there is no other evidence to show that it was intended as a posthumous disposition of property, it cannot be a will: Lungren v. Swartzwelder, 44 Md. 482; Young v. Wark, 76 Miss. 829, 25 South. 660; Patterson v. English, 71 Pa. 454; Jacoby's Estate, 190 Pa. 382, 42 Atl. 1026; Johnson v. Johnson, 103 Tenn. 32, 52 S. W. 814.

It is not requisite to the validity of a will that it should assume any particular form, or that it should be framed in language technically appropriate to its testamentary character. However irregular in form or inartificial in expression it may be, if it discloses the intention that the destination of the property on which it operates is posthumous only, it is testamentary. Neither is it material by what name or title it is designated. Instruments in form and denominated deeds, contracts, letters, and other instruments, have often been considered testamentary, to whose validity the statutory formalities of execution are requisite, and to whose operation probate is necessary: Kinnebrew v. Kinnebrew, 35 Ala. 628; Daniel v. Hill, 52 Ala. 430; Hester v. Young, 2 Ga. 31; In re Estate of Longer, 108 Iowa, 34, 75 Am. St. Rep. 206, 78 N. W. 834; In re Stumpenhauser's Estate, 108 Iowa, 555, 79 N. W. 376; Kelleher v. Kernan, 60 Md. 440; High, Appellant, 2 Doug. (Mich.) 515, 521; Conrad v. Douglas, 59 Minn. 498, 61 N. W. 673; Miller v. Holt, 68 Mo. 584; Matter of Belcher, 66 N. C. 51; Tozer v.

Jackson, 164 Pa. 373, 30 Atl. 400; Gaston's Estate, 188 Pa. 374, 68 Am. St. Rep. 874, 41 Atl. 529; Kinard v. Kinard, Spear Eq. 256; McBride v. McBride, 26 Gratt. 476; Roberts v. Coleman, 37 W. Va. 143, 16 S. E. 482.

An instrument in form "I agree to will," but intended by the maker as a will, and executed as provided for in the case of wills, is a will: In re Estate of Longer, 108 Iowa, 34, 75 Am. St. Rep. 206, 78 N. W. 834.

"The form of an instrument is of little importance in determining whether or not it is testamentary. It is not essential to the creation of a will that it should assume any particular form, or that it should be couched in language technically appropriate to its testamentary character; instruments in the form of deed, contracts, letters, transfers of bank deposits, and other writings, have often been considered testamentary, which must, to operate as transfers of property, be executed in the manner prescribed by the statute of wills. And however informal a writing may be, or however crude and inartificial its expression, still, if it discloses a testamentary intention, it will be given effect as a will, provided the statutory requirements of execution have been substantially complied with.

"The intention of the maker, rather than the form of the instrument, is the controlling consideration and the ultimate object of inquiry in the interpretation of writings of doubtful testamentary character. Did he intend the instrument to be ambulatory, revocable, and dependent upon his death for consummation, or did he intend to create irrevocable rights and interests, though perhaps with their enjoyment postponed? If the former, the instrument is testamentary; if the latter, it is not. Primarily, the intention of the maker is to be gathered from the language of the entire instrument, construing all the different parts together. But if his intention is not clearly and satisfactorily expressed in the writing itself, then a recourse to extrinsic evidence and a consideration of the facts and circumstances attending the execution of the instrument and surrounding the parties is proper": 1 Ross on Probate Law and Practice, 2–4.

Illustrations of Informal Wills.—Instruments in the following forms have been held testamentary in character, and valid or not according as they were executed as required by the statute of wills: "I wish $5,000 to go to John C. Cole in the event of my dying intestate, and the balance of my property to go to Robert Beatie, to be disposed of by him as his judgment may dictate": Matter of Estate of Wood, 36 Cal. 75; "Dear old Nance: I wish to give you my watch, two shawls, and also $5,000. Your old friend, E. A. Gordon": Clarke v. Ransom, 50 Cal. 595; "This is to serifey that ie levet to mey wife Real and personal and she to dispose for them as she wis" (olographic will): Mitchell v. Donohue, 100 Cal. 202, 38 Am. St. Rep. 279, 34 Pac. 614; "After my mother's death, my cousin, S., is my heir. This writing is instead of a formal will which I intend to

make. M. B., executrix": Matter of Beebe, 6 Dem. (N. Y.) 43; "Know all men by these presents, that I, J. M., .... do order and direct my administrators or executors, in case of my death, to pay R. C. the sum of $75,000, as a token of my regard for him and.. to commemorate the long friendship existing between us": Frew v. Clarke, 80 Pa. 170; "I, C. S., husband of M. S., have insured my life with the Knickerbocker Co., in New York, for four thousand dollars ($4,000). I, C. S., assign the whole amount, four thousand dollars, to my wife M. S. after my death, when she can do with it according to her best will without partiality toward her children. This I have written with good sound mind, and set my name to it": Shad's Appeal, 88 Pa. 111; "This article is to certify that if E. S. survive me, I bequeath him one thousand dollars of my property— free from any lien or encumbrance. To the above bequest I herewith · set my hand and seal this first day of June, 1888": Swann v. Housman, 90 Va. 816, 20 S. E. 830; a letter of attorney, authorizing persons therein named to administer upon the party's estate after his death: Rose v. Quick, 30 Pa. 225; an assignment, in .consideration of one dollar and love and affection, to a daughter of all one's property to take effect at death: Robinson v. Brewster, 140 Ill. 649, 33 Am. St. Rep. 265, 30 N. E. 683; an indorsement by the holder of certificates in a beneficial order, giving her children all her interest therein at her death, and appointing an executrix to receive payment thereof: Grand Fountain etc. v. Wilson, 96 Va. 594, 32 S. E. 48; and a writing in form, substantially, "I, A, out of my love for my sister B, do agree to make her my heir if she outlives me; and I, B, out of love for my sister A, do agree to make her my heir if she outlives me": Evans v. Smith, 28 Ga. 98, 73 Am. Dec. 751.

Wills in the Form of Transfers of Bank Deposits.—The question sometimes arises as to whether a transfer of a bank deposit is a gift or a testamentary disposition of the fund. If the donor does not mean to relinquish his right to use the money on deposit during his lifetime but to keep control of it, and on his death the funds or what remain of them to go to the donee, then there is an attempted testamentary disposition of the money which will be ineffectual unless the statute of wills is complied with: Main's Appeal, 73 Conn. 638, 48 Atl. 965; Dougherty v. Moore, 71 Md. 248, 17 Am. St. Rep. 524, 18 Atl. 35. See, also, Knight v. Tripp, 121 Cal. 674, 54 Pac. 267; Martini v. Allegreti, 146 Cal. 214, 79 Pac. 871; McCloskey v. Tierney, 141 Cal. 101, 99 Am. St. Rep. 33, 74 Pac. 699. The changing of an account in a bank from the name of a husband to that of a husband and wife, and the writing of an agreement at the head of the passbook, to which the husband and the bank assent, that the moneys are to be subject to the order of either him or her, the balance at the death of either to belong to the survivor, do not constitute a will: Metropolitan Sav. Bank v. Murphy, 82 Md. 314, 51 Am. St. Rep. 473, 33 Atl. 640. But an agreement between two savings bank de-

positors that the survivor shall have the other's deposit on his death, each retaining absolute control over his own deposit during life, is a testamentary disposition of the balance remaining at the decease, and if not properly executed as such cannot be given effect: Towle v. Wood, 60 N. H. 434, 49 Am. Rep. 326.

Where a railway employee becomes a depositor in the company's saving fund under an agreement which preserves to him the right to deal with the deposits for his own benefit, but which provides that upon his death any balance standing to his credit shall be paid to his wife, the gift is testamentary and invalid if not made in the manner prescribed by the statute of wills: Stevenson v. Earl, 65 N. J. Eq. 721, 103 Am. St. Rep. 790, 55 Atl. 1091.

In the Form of Letters.—A testamentary writing may be in the form of a letter: Crowley v. Knapp, 42 N. J. L. 297; Morrell v. Dickey, 1 Johns. Ch. 153. But if not executed according to the requirements of the statute of wills, it will be ineffectual: Orth v. Orth, 145 Ind. 184, 57 Am. St. Rep. 185, 48 N. E. 277, 44 N. E. 17; Gibson v. Van Syckle, 47 Mich. 439, 11 N. W. 261. A writing in the form of a letter from a person in his last illness to his attorney, requesting the latter to draw a will in accordance with instructions therein set forth, and containing all the requisites of a will as to the disposition of property, may be established as a will by proof of its due execution and publication by the testator as such: Scott's Estate, 147 Pa. 89, 30 Am. St. Rep. 713, 23 Atl. 212. And a letter by a testator to his attorney, saying: "What I want is for you to change my will so that she may be entitled to all that belongs to her as my wife. I am in very poor health, and would like this attended to as soon as convenient. I do not know what ought to be done, but you do," should be admitted to probate with the instrument to which it refers: Barney v. Hayes, 11 Mont. 571, 28 Am. St. Rep. 495, 29 Pac. 282. A person wrote and signed on the back of a business letter addressed to a man and his wife the following, addressed to her: "After my death you are to have $40,000; this you are to have, will or no will; take care of this until my death." This was held to be a testamentary gift of personalty: Byers v. Hoppe, 61 Md. 207, 48 Am. Rep. 89.

On the other hand, a letter directed to an undertaker, asking him, in the event of the writer's death, to cremate her body and to apprise her brother of such death, adding that her brother would take charge of her estate and be sole administrator without bonds, to trade, sell, or occupy, as may seem fit to him, is not testamentary in character, and neither gives him her estate nor appoints him administrator thereof: Estate of Meade, 118 Cal. 428, 62 Am. St. Rep. 244, 50 Pac. 541. And a letter from a brother to his sister expressing a desire for information about her children and mother, and stating that he is pecuniarily independent; that probably his health is ruined; that he wants to anticipate possibilities, and that "you and your children

get everything; your boy I want given the best education," is not testamentary: Estate of Richardson, 94 Cal. 63, 29 Pac. 484.

**Of Obligations and Acknowledgments of Indebtedness.**—The fact that an obligation is made payable after the death of the obligor does not of itself make it testamentary: Fitzgerald v. English, 73 Minn. 266, 76 N. W. 27. But if the relation of debtor and creditor is to exist it would seem that it must be created and subsist in the lifetime of the parties, though payment may be deferred until the death of one. A writing which reads, "At my death, my estate or my executor pay to July Ann Cover the sum of $3,000," is testamentary and not an obligation for the payment of money, though delivered to the obligee: Cover v. Stem, 67 Md. 49, 1 Am. St. Rep. 406, 10 Atl. 231. See, in this connection, Ferris v. Neville, 127 Mich. 444, 89 Am. St. Rep. 480, 86 N. W. 960. But an instrument in the following form: "Due F. the sum of two hundred and four dollars and sixty-eight cents with interest, and said sum of money and interest is not to be paid during my lifetime, but to be paid by my executor out of my estate within a year after my death; and said sum is due and owing by my son E. to the said F. I bind my executor to pay the same out of my estate, and then to be deducted from the distributive share coming to my said son E. out of my estate," is an acknowledgment of indebtedness binding on the executor: Feeser v. Feeser, 93 Md. 716, 50 Atl. 406. So an instrument executed by A, declaring that, in consideration of the care and attention shown him by B during his illness, he was justly indebted to her, and declaring that his executor or administrator should pay her $1,000 in one year after his decease, which was delivered to B, is an obligation and not a testamentary disposition: Shields v. Irwin, 3 Yeates, 389.

**In the Form of Contracts.**—A will may be in form and in some substantial respects a contract if the intention of the author to make it a testamentary disposition of his property is nevertheless clearly apparent: Castor v. Jones, 86 Ind. 289; Heaston v. Krieg, 167 Ind. 101, 119 Am. St. Rep. 475, 77 N. E. 805; Teske v. Dittberner, 65 Neb. 167, 101 Am. St. Rep. 614, 91 N. W. 188. A contract whereby A agrees with B that if the latter will maintain the former during life, "all the personal property of A shall, at his death, become the property of B," is testamentary, and will not be given effect if the attestation is insufficient: McCarty v. Waterman, 84 Ind. 550. The reasons, as given by the court for this conclusion, were that the consideration for the agreement was executory, no present interest was passed, and A might, in accord with the terms of the agreement, have deprived B of a right to any specific property by devesting himself of all his personalty so that none should "belong to him." In Emery v. Darling, 50 Ohio St. 160, 33 N. E. 715, a writing by one sister covenanting with another that if the latter will reside with her as long as she desires she will "give and bequeath" to her all the property of which she dies seised, is held enforceable as a con-

tract, and not void for want of conformity with the statute of wills. "It is the essence of a will," says the court, "that its dispositions should be in the nature of gifts."

Clearly, a contract does not take on a testamentary character merely because its performance is postponed until after the death of the maker and devolves upon his representative. The instrument must, of course, possess the essential characteristics of a testamentary writing: Huguley v. Lanier, 86 Ga. 636, 22 Am. St. Rep. 487, 12 S. E. 922. Where an uncle and nephew enter into articles of partnership for the practice of medicine, whereby it is agreed to that, "in the event of the death of the senior member of the firm, all his property, personal and otherwise, which he held in partnership at the time of his death, should go to the junior partner," this is not a testamentary disposition of the property: McKinnon v. McKinnon, 56 Fed. 409, reversing 46 Fed. 713.

**Of Promissory Notes.**—A promissory note may be made payable after death. The mere fact that it is made payable at or a certain time after the death of the maker does not make it a testamentary paper which must be executed in accordance with the statute of wills: Bristol v. Warner, 19 Conn. 7; Beatty v. Western College, 177 Ill. 280, 69 Am. St. Rep. 242, 52 N. E. 432; Price v. Jones, 105 Ind. 543, 55 Am. Rep. 230, 5 N. E. 683; Wolfe v. Wilsey, 2 Ind. App. 549, 28 N. E. 1004; Martin v. Stone, 67 N. H. 367, 29 Atl. 845; Hegeman v. Moon, 131 N. Y. 462, 30 N. E. 487; Crider v. Shelby, 95 Fed. 212; Roffey v. Greenwood, 10 Ad. & E. 222. A note payable on or before a certain date, providing that in the event of the death of the maker before maturity it shall then become due, is not testamentary: Miller v. Western College, 71 Ill. App. 587. And a note, founded on a consideration, which remains in the hands of the payee until the death of the maker, although received by him and held during the life of the maker subject to the condition that it should be returned to the maker whenever he might wish it, is valid: Worth v. Case, 42 N. Y. 362.

Where the payee of a note wrote upon its back: "If I am not living at the time this note is paid, I order the contents to be paid to A. H.," and having signed it, died before the note was paid, it was held that the indorsement was testamentary and entitled to probate as a will: Hunt v. Hunt, 4 N. H. 434, 17 Am. Dec. 438. It is well to remember that the statute of wills cannot, of course, be evaded by making a promissory note intended as a testamentary bequest merely: Graves v. Safford, 41 Ill. App. 659.

**In the Form of Leases.**—A provision in a lease that, in the event of the death of the lessor before the expiration of the lease, the rent for the unexpired term shall be paid to his wife, she not being a party to the lease or apparently giving any consideration for the promise, is in the nature of a will and inoperative if not properly executed: Priester v. Hohloch, 70 App. Div. 256, 75 N. Y. Supp. 405.

But in the case of In the Goods of Robinson, L. R. 1 Pro. & D. 384, a provision in a lease as to the application of the rent in case of the lessor's death before the expiration of the lease, the lessee being beneficially interested in such application, was held not testamentary, since no part of the agreement was revocable and it came into operation immediately upon its execution.

## Wills in the Form of Deeds and Conveyances.

**Distinction Between Wills and Deeds.**—Instruments of doubtful testamentary character are found most frequently in the form of deeds. The fact that a writing is in the form of a deed is persuasive, but not conclusive, that it was not intended as a will. If it passes no present interest or right, is dependent on the death of the maker to consummate it, and is under his control and recoverable during his lifetime, it is a will, notwithstanding it is denominated a deed, and is a deed in form, and in some essential characteristics. The validity of such an instrument, then, will depend upon whether it is executed in the manner prescribed by the statute of wills: Dunn v. Bank of Mobile, 2 Ala. 152; Shepherd v. Nabors, 6 Ala. 631; Moser v. Moser, 32 Ala. 551, 556; Gillham v. Mustin, 42 Ala. 365; Gomez v. Higgins (Ala.), 30 South. 417; Griswold v. Griswold, 148 Ala. 239, 121 Am. St. Rep. 64, 42 South. 554; Estate of Skerrett, 67 Cal. 585, 8 Pac. 181; Bright v. Adams, 51 Ga. 239; Dye v. Dye, 108 Ga. 741, 33 S. E. 848; Jones v. Loveless, 99 Ind. 317; Tuttle v. Raish (Iowa), 90 N. W. 66; Reed v. Hazleton, 37 Kan. 321, 15 Pac. 177; Hazleton v. Reed, 46 Kan. 73, 26 Am. St. Rep. 86, 26 Pac. 450; Poore v. Poore, 55 Kan. 687, 41 Pac. 973; Rawlings v. McRoberts, 95 Ky. 346, 25 S. W. 601; In re Lautenschlager's Estate, 80 Mich. 285, 45 N. W. 147; Sartor v. Sartor, 39 Miss. 760; Murphy v. Gabbert, 166 Mo. 596, 89 Am. St. Rep. 733, 66 S. W. 536; Pinkham v. Pinkham, 55 Neb. 729, 76 N. W. 411; Townsend v. Rackham, 143 N. Y. 516, 38 N. E. 731; Babb v. Harrison, 9 Rich. Eq. 111, 70 Am. Dec. 203; Jaggers v. Estes, 2 Strob. Eq. 343, 49 Am. Dec. 674; Armstrong v. Armstrong, 4 Baxt. 357; Millican v. Millican, 24 Tex. 426; De Bagligethy v. Johnson, 23 Tex. Civ. 272, 56 S. W. 95.

If, on the other hand, the instrument conveys a present vested interest or right, it is a deed, although it may contain provisions and terms ordinarily found in wills. An instrument having otherwise the general formalities of a deed will be construed as a deed, whenever it appears that the maker intended to convey any estate or interest whatever, to vest upon the execution of the paper, though the absolute enjoyment of the estate passed is postponed until the death of the grantor: Adams v. Broughton, 13 Ala. 731; Thompson v. Johnson, 19 Ala. 59; Stewart v. Sherman, 5 Conn. 317; Cumming v. Cumming, 3 Ga. 460; Guthrie v. Guthrie, 105 Ga. 86, 31 S. E. 40; Bowler v. Bowler, 176 Ill. 541, 52 N. E. 437; Spencer v. Robbins, 106 Ind. 580, 5 N. E. 726; Kelley v. Shimer, 152 Ind. 290, 53 N. E.

238; Hinson v. Bailey, 73 Iowa, 544, 5 Am. St. Rep. 700, 35 N. W. 626; Ward v. Ward, 104 Ky. 857, 48 S. W. 411; Pennington v. Lawson, 23 Ky. Law Rep. 1340, 65 S. W. 120; Exum v. Canty, 34 Miss. 533, 569; Hileman v. Bonslaugh, 13 Pa. 344, 53 Am. Dec. 474.

**Effect of Reservation of Life Estate.**—The fact that the grantor reserves the possession, use, enjoyment, or profits during his life does not make the instrument a will: Hall v. Burkham, 59 Ala. 349; Abney v. Moore, 106 Ala. 131, 18 South. 60; Bunch v. Nicks, 50 Ark. 367, 7 S. W. 563; Graves v. Atwood, 52 Conn. 512; Jackson v. Culpepper, 3 Ga. 569; Robinson v. Schly, 6 Ga. 515; Moye v. Kittrell, 29 Ga. 677; Bass v. Bass, 52 Ga. 531; Youngblood v. Youngblood, 74 Ga. 614; Seals v. Pierce, 83 Ga. 787, 20 Am. St. Rep. 344, 10 S. E. 589; Goff v. Davenport, 96 Ga. 423, 23 S. E. 395; Cates v. Cates, 135 Ind. 272, 34 N. E. 957; Saunders v. Saunders (Iowa), 88 N. W. 329; Love v. Blauw, 61 Kan. 496, 78 Am. St. Rep. 334, 59 Pac. 1059; Beebe v. McKenzie, 19 Or. 296, 24 Pac. 236; Dawson v. Dawson, Rice Eq. 243; Swails v. Bushart, 2 Head, 561; Hart v. Rust, 46 Tex. 556; Chrisman v. Wyatt, 7 Tex. Civ. App. 40, 26 S. W. 759; Martin v. Faries, 22 Tex. Civ. App. 539, 55 S. W. 601. On the contrary, a reservation of a life estate, and that only, indicates an intention on the part of the grantor to pass the remainder interest immediately. Worley v. Daniel, 90 Ga. 650, 16 S. E. 938. "It is true that a will is a disposition of property to take effect after death, but that definition of a will does not exclude the conclusion that a deed may be the same in that particular. The former is necessarily so, but not the latter": Horn v. Broyles (Tenn.), 62 S. W. 297, 304.

"The original tendency," observes Mr. Justice Lumpkin, in West v. Wright (Ga.), 41 S. E. 602, "was toward holding that papers indicating an intention to postpone enjoyment by the persons claiming to be grantees till after the death of the persons executing the papers should be classed as wills. This tendency in time yielded to another, namely, that it was the sounder policy in case of doubt to declare that the instrument was a deed, and thus make it effectual, when holding it to be testamentary would, for want of the requisite number of witnesses, render it nugatory. The true test, of course, is the intention of the maker."

**Importance of Maker's Intention.**—When an unskillfully drawn instrument employs apt words of conveyance and of devise or bequest, and mingles provisions peculiar to deeds with provisions peculiar to wills, and besides postpones enjoyment or possession until after the death of the maker, it becomes a matter of no inconsiderable difficulty to ascertain whether it is a will or a deed. Necessarily, only general rules can be formulated for the determination of the question, since in practically every case the language of the paper is different, and the circumstances under which it is executed are widely varying. The true inquiry is as to the effect and operation the party making it intended it to have. His intention is the controlling ques-

tion and the ultimate object of inquiry. Did he intend it to be ambulatory, revocable, and dependent upon his death for its consummation, or did he intend to create irrevocable rights and interests, though perhaps with their enjoyment postponed? If the instrument cannot be revoked, defeated, or impaired by the act of the maker, it is a deed; but if the estate, title, or interest does not pass except in the event of his death and is subject to revocation during his lifetime, it is a will. The form of the writing or the designation given it is of little consequence. If it passes a present interest, it is a deed; if its operation is posthumous only, it is a will: Walker v. Jones, 23 Ala. 448; Jordan v. Jordan, 65 Ala. 301; Tradwick v. Davis, 85 Ala. 342, 5 South. 83; Crocker v. Smith, 94 Ala. 295, 10 South. 258; Moore v. Campbell, 102 Ala. 445, 452, 14 South. 780; Kenney v. Parks (Cal.), 54 Pac. 251; Hester v. Young, 2 Ga. 31; Dudley v. Mallery, 4 Ga. 52; Symmes v. Arnold, 10 Ga. 506; Hall v. Bragg, 28 Ga. 330; Williams v. Tolbert, 66 Ga. 127; White v. Hopkins, 80 Ga. 154, 4 S. E. 863; Barnes v. Stephens, 107 Ga. 436, 33 S. E. 399; West v. Wright (Ga.), 41 S. E. 602; Stroup v. Stroup, 140 Ind. 179, 39 N. E. 864; Saunders v. Saunders (Iowa), 88 N. W. 329; Wall v. Wall, 30 Miss. 91, 64 Am. Dec. 147; Allison v. Allison, 4 Hawks (N. C.), 141; President etc. of Bowdoin College v. Merritt, 75 Fed. 480. In determining whether an instrument is a testament or a deed, courts "will not consider what the maker believes it to be, but what, in point of law, it is": Brewer v. Baxter, 41 Ga. 212, 5 Am. Rep. 530.

How the Intention is Ascertained.—Primarily, the intention of the maker is to be gathered from the language of the instrument itself. In doubtful cases, however, this does not preclude a consideration of the facts and circumstances under which it was made and which existed up to the death of the author: Sharp v. Hall, 86 Ala. 110, 11 Am. St. Rep. 23, 5 South. 497; Gage v. Gage, 12 N. H. 371; Robertson v. Dunn, 2 Murph. (N. C.) 133, 5 Am. Dec. 525. Moreover, if the instrument recites a consideration, describes the land with particularity, contains covenants of title, is sealed, acknowledged, delivered, or recorded—these, or any one of them, is a circumstance tending to show that the maker intended the paper as a deed: Whitten v. McFall, 122 Ala. 619, 26 South. 131; Worley v. Daniel, 90 Ga. 650, 16 S. E. 938; Owen v. Smith, 91 Ga. 564, 18 S. E. 527; Gay v. Gay, 108 Ga. 739, 32 S. E. 846; Cates v. Cates, 135 Ind. 272, 34 N. E. 957; Decker v. Decker, 93 Iowa, 204, 61 N. W. 921; Saunders v. Saunders (Iowa), 88 N. W. 329; Schmidt v. Reed, 132 N. Y. 100, 30 N. E. 373; Branch v. Byrd, 15 S. C. 142; Brown v. Moore, 26 S. C. 160, 2 S. E. 9. So a reservation of a power of revocation is a circumstance tending to rebut the idea of a will: Hall v. Burkham, 59 Ala. 349. Nevertheless, instruments, acknowledged and recorded, have been pronounced testamentary: Stevenson v. Huddleson, 13 B. Mon. (Ky.) 299; Carlton v. Cameron, 54 Tex. 72, 38 Am. Rep. 620; Hannig v. Hannig (Tex. Civ. App.), 24 S. W.

695; Grigsby v. Willis (Tex. Civ. App.), 59 S. W. 574. The non-delivery of a writing is a circumstance favoring it as a will: Nichols v. Chandler, 55 Ga. 369; Ragsdale v. Booker, 2 Strob. Eq. (S. C.) 348.

**Writings of Doubtful Import.**—If a writing cannot have operation as a will, but may as a deed, then, in doubtful cases, it will be made effective by construing it to be a deed: Dismukes v. Parrott, 56 Ga. 513; West v. Wright (Ga.), 41 S. E. 602; Love v. Blauw, 61 Kan. 496, 78 Am. St. Rep. 334, 59 Pac. 1059; Jacoby v. Nichols, 23 Ky. Law Rep. 205, 62 S. W. 734. Conversely, if a paper cannot operate as deed, it will be given effect as a will when this can fairly be done: Sharp v. Hall, 86 Ala. 110, 11 Am. St. Rep. 23, 5 South. 497; Abney v. Moore, 106 Ala. 131, 18 South. 60. But an instrument intended to operate as a deed is not entitled to probate as a will, if inoperative as a deed: Edwards v. Smith, 35 Miss. 197. However, it is well said by Mr. Justice Brannon, in Lauck v. Logan, 45 W. Va. 251, 31 S. E. 986: "If it were an open question, I would say that the law ought to give a paper not so executed as to be good as a will effect as a deed if good as a deed, and a paper so executed so as not to be good as a deed effect as a will, if good as a will."

**Illustrations of Wills.**—The following instruments have been held testamentary in character: "Due at my death to J. the sum of $2,500, from the general fund of my estate, as a gift. The condition of the above bond or obligation is such that whereas, for the fidelity and obedience, as well as the natural love and affection that I have for my daughter J., I donate, in the above manner, what I design for her at my death": Johnson v. Yancey, 20 Ga. 707, 65 Am. Dec. 646; a writing in form a deed conveying all the property of which the maker may die seised or possessed: Brewer v. Baxter, 41 Ga. 212, 5 Am. Rep. 530; Ward v. Campbell, 73 Ga. 97; or an undivided interest therein: Watkins v. Dean, 10 Yerg. (Tenn.) 320, 31 Am. Dec. 583. Compare Robey v. Hannon, 6 Gill (Md.), 463; an instrument executed by a husband, reciting a gift of land to his wife to take effect on his death, and reserving the right to sell or dispose of it during his life, in which case the paper to be void: Ellis v. Pearson, 104 Tenn. 591, 58 S. W. 318; a writing in form a deed and styled and acknowledged as such, but containing a provision "that this deed is not to take effect until after my death," coupled with a direction that the beneficiary should pay the maker's debts, and have only the remaining property: Cunningham v. Davis, 62 Miss. 366; a conveyance reserving a life estate in the grantor, with the power of management and disposition, and the proceeds of any sale to his own use, upon his death, if the land remained unsold, to go to his children: Stroup v. Stroup, 140 Ind. 179, 39 N. E. 864; a conveyance, in the usual form, "to commence after the death of both of said grantors," and providing that "it is hereby understood and agreed between the grantors and the grantees that the grantee shall have no interest in the said premises as long as the grantors or either

of them shall live": Leaver v. Gauss, 62 Iowa, 314, 17 N. W. 522; and an instrument filled out on a printed warranty deed form, reciting a consideration of one dollar and natural love and affection, conveying, besides two tracts not here involved, "all our right, title, and interest in" our homestead, "should we not sell or dispose of the same before death," the grantors remaining in possession up to their death: Wren v. Coffey (Tex. Civ. App.), 26 S. W. 142.

Illustrations of Deeds.—The following writings have been held not testamentary in character, but deeds: An instrument in the form of a warranty deed except for these words: "Conditions of this deed is such as said party of the second part that this land shall not be encumbered in any way, or this deed shall be void. The party of the first part is to hold said property his lifetime": Bevins v. Phillips, 6 Kan. App. 324, 51 Pac. 59; or except for a clause, "To hold the above-described premises to the said B. P. W. of the second part, his heirs and assigns, to be his at my death and the death of my wife, E. W.": Wynn v. Wynn, 112 Ga. 214, 37 S. E. 378; an instrument in form and name a deed, acknowledged and delivered, whereby, for a consideration of five dollars and love and affection the grantors "do grant with general warranty," a tract of land, closing with this clause, "but it is hereby distinctly understood and stipulated that this deed shall take effect and be in full force and effect immediately after the said L. shall depart his life, and not sooner": Lauck v. Logan, 45 W. Va. 251, 31 S. E. 986; a deed "not to take effect during my lifetime, and to take effect and be in force from and after my death": Wyman v. Brown, 50 Me. 139; a deed "not to take effect and operate as a conveyance till my decease": Abbott v. Holway, 72 Me. 298; a conveyance delivered but not to take effect or be recorded until the death of the grantor, without the creation of an intermediate estate to support it: Shackleton v. Sebree, 86 Ill. 616; Harshbarger v. Carroll, 163 Ill. 636, 45 N. E. 565; Latimer v. Latimer, 174 Ill. 418, 51 N. E. 548; a writing by which the maker deeds land to his wife for life, remainder to his grandson, which provides that "this deed shall not take effect" until the grantor's death, he "to have and keep full possession of said farm during his life": Phillips v. Thomas Lumber Co., 94 Ky. 445, 42 Am. St. Rep. 367, 22 S. W. 652; deeds executed by a husband and wife, conveying each to the other his or her separate property, and delivered to a third person, with instructions to record that of the one dying first: Kenney v. Parks (Cal.), 54 Pac. 251; an instrument conveying property "to take effect, as far as regards handing over of property, at my death," and reserving the right to revoke the instrument during life, and providing that "placing the same among my papers is intended by me as a delivery of said property at my death": Wall v. Wall, 30 Miss. 91, 64 Am. Dec. 147; a conveyance subject to a life estate in the grantor, the payment of his debts, the expenses of his last sickness, and certain bequests: Powers v. Scharling (Kan.),

67 Pac. 820. See, also, Bromley v. Mitchell, 155 Mass. 509, 30 N. E. 83; a paper in form a will, the disposition of property therein made taking effect at once, the consideration being the care and support of the maker for life: Goad v. Lawrence (Ky.), 68 S. W. 411; Dreisbach v. Serfass, 126 Pa. 32, 17 Atl. 513; and a deed executed in expectation of approaching death, delivered and intended to take effect immediately and unconditionally: Brown v. Atwater, 25 Minn. 520; Diefendorf v. Diefendorf, 8 N. Y. Supp. 617, 29 N. Y. St. Rep. 122; Billings v. Warren, 21 Tex. Civ. App. 77, 50 S. W. 625.

A conveyance executed by a married woman, intended to be operative after her death and therefore testamentary in character, and never delivered, cannot be admitted to probate as a will, though her husband joined in the execution of the conveyance, and there was attached thereto the certificate of a notary by him signed, certifying to its acknowledgment. The signatures so placed on the deed cannot be considered as the signatures of subscribing witnesses: Gump v. Gowans, 226 Ill. 635, 117 Am. St. Rep. 275, 80 N. E. 1086.

**Writings in the Form of Trust Deeds.**—Many instruments settling property contain provisions that become operative only after the death of the settler. Notwithstanding this, however, if they are executed and delivered to take immediate effect, passing a present interest to the trustee, they are deeds of trust and not testamentary dispositions: Massey v. Huntington, 118 Ill. 80, 7 N. E. 269; Smith v. Baxter (N. J. Eq.), 49 Atl. 1130; Lines v. Lines, 142 Pa. 149, 24 Am. St. Rep. 487, 21 Atl. 809; Lightfoot v. Colgin, 5 Munf. (Va.) 42; President etc. of Bowdoin College v. Merritt, 75 Fed. 480. If there is no restriction in a trust deed as to when it shall go into effect, presumptively it takes effect at once, and hence is not testamentary: Brace v. Van Eps, 12 S. D. 191, 80 N. W. 197.

An instrument executed by a father, under seal and recorded, conveying property to two of his sons, to be managed by them, for the support of himself and wife during life, and at death to be divided among all the children, and also providing for the support of an imbecile child and the education of another, is not a will but a deed of trust: Robinson v. Ingram, 126 N. C. 327, 35 S. E. 612. So a trust deed purporting to convey property to trustees at the time of its execution is not rendered testamentary because of reservations, trusts, and conditions concerning the use of the property during the lifetime of the grantor: Kelly v. Parker, 181 Ill. 49, 54 N. E. 615. But an instrument purporting to convey to a trustee the undivided half of all property which the maker might leave at his death, after the payment of his debts, to be held for the heirs of his wife, reserving the control and disposal of the property during life, and providing it should be void if he survived his wife, is testamentary in character: Roth v. Michalis, 125 Ill. 325, 17 N. E. 809.

Instruments Partly Testamentary.—An instrument may be in part a contract or deed and in part a will. The fact that some of its provisions may have the force of a contract and may become operative during the maker's life does not necessarily deprive the remainder from being testamentary and admissible to probate: Taylor v. Kelly, 31 Ala. 59, 68 Am. Dec. 150; Burlington University v. Barrett, 22 Iowa, 60, 92 Am. Dec. 376; Reed v. Hazleton, 37 Kan. 321, 15 Pac. 177. And a conveyance need not be homogeneous. It may be a deed in part and a will in part. There is nothing to prevent one in the same instrument from selling or giving certain property to another and willing other property to the same individual: Robinson v. Schly, 6 Ga. 515, 528; Powers v. Scharling (Kan.), 67 Pac. 820.